UNITED STATES, Appellee,

v.

David E. McCONNELL, Master Sergeant,
U.S. Air Force, Appellant.

No. 97–0666.
Crim.App. No. 32081.

U.S. Court of Appeals for
the Armed Forces.

Argued May 22, 2001.

Decided Sept. 28, 2001.

BAKER, J., delivered the opinion of the Court, in which CRAWFORD, C.J., and SULLIVAN, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Charles W. Gittins* (argued); *Captain Kyle R. Jacobson.*

For Appellee: *Captain Christa S. Cothrel* (argued); *Colonel Anthony P. Dattilo* and *Major Lance B. Sigmon* (on brief); *Captain Suzanne Sumner.*

Judge BAKER delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer members of an indecent assault upon his step-daughter, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The members sentenced appellant to a bad-conduct discharge, reduction to pay grade E–4, and 3 years' confinement. The convening authority reduced the confinement period to 1 year but otherwise approved the sentence as adjudged. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. Appellant petitioned this Court for review, and we set aside the Court of Criminal Appeals decision and remanded the record of trial for a factfinding hearing on the issue of effective assistance of counsel, pursuant to *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967). 50 MJ 115–16 (1998). Following the hearing, the Court of Criminal Appeals held that appellant received effective assistance and again affirmed the findings and sentence. We subsequently granted review to determine:

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL

We hold that appellant was not denied effective assistance under the Sixth Amendment and affirm.

*Background*

Appellant was convicted of an indecent assault upon his 17–year–old step-daughter, DM, occurring on the evening of September 7, 1995, at Kadena Air Base, Okinawa, Japan. DM testified that appellant came to her room that evening, around 9:30 p.m., laid down on the bed beside her, and touched her breast and kissed her on the cheek. Frightened by this encounter, DM told appellant that she wanted to go to sleep. Appellant asked her for a hug, she complied, and appellant left the room. DM then immediately called her boyfriend because she did not wish to remain at the house and told him what happened. DM's boyfriend, her fiancé at the time of trial, testified that she sounded hysterical when she called. DM's boyfriend drove to her house and then drove her to the police station, where she reported the incident.

At the trial that followed on January 23–24, 1996, appellant was represented by two attorneys: a detailed military counsel, Captain (Capt) Castro, and a civilian counsel, Ms. Annette Eddie–Callagain.[1] Appellant pled not guilty, and he did not testify. His defense team did not make an opening statement or put on any evidence in his case, but they did cross-examine all of the prosecution witnesses, except DM's boyfriend. Appellant was ultimately convicted.

Appellant now claims that he received ineffective assistance of counsel at trial and notes numerous actions or omissions by his attor-

---

1. Capt Castro was promoted to Major by the time of the *DuBay* hearing.

neys. Ms. Eddie–Callagain is acknowledged by all to have been lead counsel on the case, and appellant attempts to focus his claims on her performance. However, we decline to address the conduct of appellant's two lawyers separately or judge appellant's complaints based only on Ms. Eddie–Callagain's performance. *United States v. Boone*, 42 MJ 308, 313 (1995)("Where an accused is represented by both civilian counsel and detailed military counsel, the performance of defense counsel is measured by the combined efforts of the defense team as a whole."). Accordingly, we evaluate the performance of the defense team as a unit for each of appellant's claims.[2]

### Discussion

█ The departure point for analysis of an ineffective-assistance claim is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There, the Court set forth a two-pronged test. "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. In analyzing ineffective-assistance claims under *Strickland*, this Court has asked three questions:

1. Are the allegations made by appellant true; and, if they are, is there a reasonable explanation for counsel's actions in the defense of the case?

2. If they are true, did the level of advocacy "fall[ ] measurably below the performance ... [ordinarily expected] of fallible lawyers"?

3. If ineffective assistance of counsel is found to exist, "is ... there ... a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt?"

*United States v. Polk*, 32 MJ 150, 153 (CMA 1991) (citations omitted).

The Court in *Strickland* also noted that the performance and prejudice prongs of the test can be analyzed independently.

---

2. Our ultimate conclusion that appellant was not denied his Sixth Amendment right to effective counsel in no way suggests that we condone civilian defense counsel's destruction of her case

[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order [the Court in *Strickland* did,] or even to address both components of the inquiry if the defendant makes an insufficient showing on one.... [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance.

466 U.S. at 697, 104 S.Ct. 2052. Therefore, this Court can evaluate appellant's ineffective-assistance claim based on a "lack of sufficient prejudice," without grading counsel's performance. *Id.* In so doing, the Court does not condone shoddy lawyering but simply acknowledges that an appellant must meet both the performance and prejudice prongs of the *Strickland* test to obtain reversal of a conviction. *Id.* at 691, 104 S.Ct. 2052 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

The third question in the *Polk* test comports with the prejudice standard in *Strickland*. Under this test, the Court can test allegations of ineffectiveness for prejudice by assuming that the errors alleged satisfy the deficient performance prong of *Strickland*, and then considering whether there is "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." 32 MJ at 153.

Within appellant's wide-ranging attack on trial defense counsel's performance are found five specific complaints. He argues counsel:

1. failed to move to suppress appellant's pretrial statements to investigators;

2. failed to interview certain witnesses in order to attack the veracity of the complaining witness, DM;

3. failed to put on good military character evidence on the merits;

---

file during a time when she was aware that her trial performance was an issue on review in the lower court.

4. failed to move *in limine* to preclude admission of "other acts" evidence; and

5. failed to make an opening statement.[3]

Since counsel are presumed competent, an appellant must rebut this presumption by showing specific errors that were unreasonable under prevailing professional norms. *United States v. Scott,* 24 MJ 186, 188 (CMA 1987), citing *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Appellant's first and third allegations fail to demonstrate deficient performance under the first prong of *Strickland*. As for the other three allegations, we need not assess counsel's performance before determining whether appellant has made the requisite showing of prejudice under prong two. After an examination of the record, we hold that given the testimony of the complaining witness and appellant's admissions to investigators, he has failed to make such a showing.

### Appellant's Pretrial Statements

■ "When a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been meritorious." *United States v. Napoleon,* 46 MJ 279, 284 (1997). Appellant alleges that counsel's failure to make a motion to suppress his statements to investigators prejudiced his case. Specifically, appellant claims that when he signed his interview form, it did not list "sexual assault" as the charged offense, and that he was not properly warned of his rights.

■ Appellant testified that he gave a written memo to defense counsel on the subject and that he discussed it with his lawyers, along with his concerns that the investigators' report distorted his statements. Major (Maj) Castro testified that he could not remember whether appellant had discussed with him the claim that his interview form did not list the words "sexual assault" as the

charged offense when he signed it. Ms. Eddie–Callagain testified that she had not seen the memo, which was for the assistant defense counsel and undated, and that appellant did not discuss that issue with her.

Given this testimony, it is unclear whether trial defense counsel were aware of the memo. Regardless, appellant cannot demonstrate a reasonable probability that a motion to suppress his statements would have had merit. Appellant claims that he did not receive proper warnings and signed an incomplete form, but the interviewing investigator contradicts him. Special Agent Shibazaki, who interviewed appellant on the evening of the incident, stated that he read appellant his rights and told him he was suspected of sexual assault. This investigator also had a signed acknowledgement from appellant that he had been properly advised he was suspected of sexual assault. Furthermore, assistant defense counsel was apparently aware of how the investigator would testify on this issue, since he had interviewed him, examined the investigator's notes, and reviewed his testimony taken at the investigation under Article 32, UCMJ, 10 USC § 832.

Essentially, this was appellant's word against that of the investigator in possession of a signed acknowledgement form. Without more, appellant has failed to show a reasonable probability that a motion to suppress this evidence would have been meritorious.

### Failure to Investigate and Attack the Credibility of DM

■ Appellant claims that the failure of his defense counsel to attack DM's credibility prejudiced his defense.

As noted by the military judge in his findings of fact from the *DuBay* hearing, counsel's strategy evolved over time. Maj Castro testified that they considered attacking DM's credibility as a witness, but discarded that option. He explained that as a tactical mat-

---

**3.** Appellant also claims his trial defense counsel were ineffective for not objecting to the military judge's refusal to instruct on the lesser-included offense of assault and battery. Appellant asserts that it was plain error for the military judge not

to have so instructed. First, counsel properly preserved the issue by requesting the instruction. Second, we decline to reach an issue that was neither submitted for review nor specified by this Court.

ter, he hoped DM would not testify, but he did not want to "burn bridges" with her if she did. He further hoped she might testify for appellant at sentencing. He also feared that trying to show DM was a liar in such a contested case might anger the members and result in a harsher sentence. DM eventually provided a clemency statement for appellant, and his sentence was later reduced by the convening authority from 3 years to 1 year.

Maj Castro's notes, dated January 18, 1996, 5 days before trial, also support his recollection. These notes indicate that the "plan" for trial was to rest in findings, not use a good military character defense, "gently" cross-examine DM, and "focus on sentencing."

Ms. Eddie–Callagain testified repeatedly that appellant specifically told her *not* to attack DM's credibility. Her testimony at the *DuBay* hearing on this issue was as follows (Eddie–Callagain as WIT):

WIT: I wanted to talk to all of [DM's] teachers at Kadena High School to see whether or not there was a pattern as far as lying was concerned....

DC: Okay. Did you do that?

WIT: No, because before we got to that point, [appellant] pulled the plug on that.

DC: When you say [appellant] pulled the plug, what specifically did [appellant] say to you?

WIT: ... "I don't want her credibility attacked. I don't want you going after her. Leave her alone."

* * *

DC: But is it your testimony that [appellant] said to you, "I do not want her credibility attacked?"

WIT: Absolutely....

DC: But he specifically talked about her credibility?

WIT: Yes.

Later, in defense counsel's examination of Ms. Eddie–Callagain, the issue was revisited as follows:

DC: Okay. What was the next thing he told you?

WIT: "You will not attack her credibility, you will not, I guess, look into any whatever, you know, dig up any dirt like what I wanted to do with the school...."

DC: ... What was your response to that instruction by your client that you were hired to represent?

WIT: At that point, it was explained to him that you are tying our hands because this case is all about credibility. You had only two witnesses who were in that bedroom that night.

Appellant testified during cross-examination that he agreed to a defense strategy that did not involve attacking his step-daughter's credibility, and that he expected his lawyers to "do whatever the lawyers do."[4] He also admitted that he did not complain to his lawyers at the time about the decision not to attack DM's credibility.

The testimony at the *DuBay* hearing indicates that there may have been some initial confusion on appellant's part about the evolving strategy of whether to attack DM's credibility if she testified. However, the military judge in the *DuBay* hearing found that this strategy was ultimately adopted by appellant, with his lawyers, regardless of who suggested the idea.

Attendant to appellant's complaint relating to DM's credibility is his claim that his defense counsel did not interview all possible witnesses against his daughter. The Supreme Court has noted the following relationship between the information given by a defendant and the duty of an attorney to pursue an investigation:

[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a

---

4. The record reflects the following question and answer:

TC: Yes or no. Isn't it true that this case, by your direction, had evolved to a point where the approach was going to not involve attacking your daughter's credibility?

APP: I think that's what we agreed to, yes, Sir.

heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

In this case, counsel obtained some information regarding DM's credibility but decided not to use it for strategic reasons and, as indicated above, to remain consistent with appellant's wishes. Appellant has raised the question whether it is reasonable for defense counsel to make any strategic decision like this without first conducting an appropriate investigation to determine what evidence might be available, as well as whether such an investigation would have uncovered other ways to bring DM's credibility into question without a frontal assault on cross-examination. Additionally, appellant testified that he brought a list of lies told by DM to a preliminary meeting with a private investigator at his attorney's request, but could not remember whether she kept it or gave it back to him. He described the list as "little stuff like taking the car someplace and not bringing it back, ... coming home late, telling [sic] that she was one place and was someplace else[,]" and forging notes at school.

Ms. Eddie–Callagain testified that appellant told her DM had difficulty telling the truth and that she was promiscuous. She also stated that appellant never gave her a list of instances that his step-daughter lied, and that he only told her of one instance where she lied about going to the library. Maj Castro testified that he did not see a list detailing lies told by DM, but remembered appellant discussing DM's promiscuity.

Under these circumstances, appellant has not carried his burden on appeal, or at the *DuBay* hearing, of offering specific assertions as to what witnesses would have said

regarding the victim's credibility so that this Court can reliably assess whether the outcome of the trial would have been different. Therefore, appellant has failed to meet his burden under the prejudice prong of *Strickland.* As a result, we need not decide whether the strategic choice to focus on sentencing and to not attack DM fell below the *Strickland/Polk* standard of reasonableness. Nonetheless, we note that appellant took part in formulating the strategy of not attacking his step-daughter's testimony, and that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless ..., counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

### Failure to Use Good Military Character Evidence

■ Appellant argues that the failure to use evidence of his good military character was ineffective assistance of counsel. Maj Castro testified that the decision to use the witnesses for appellant's good character at sentencing, rather than on the merits, had a tactical basis. He did not want these witnesses to testify at the findings phase because they could be cross-examined about certain sexually explicit comments that appellant made to his daughter. Instead, the defense decided to use these witnesses at sentencing to try to impress the officer members with the positive opinions of other officers who had worked with appellant. Maj Castro also gave his opinion that using these character witnesses for a good military character defense during the findings phase of the trial would have lessened their effectiveness at sentencing.

Appellant's testimony on direct at the *DuBay* hearing suggested confusion on his part as to whether or not he understood his counsel had decided to forgo putting on good military character as a defense on the merits. However, on cross-examination, he agreed

with Maj Castro's testimony that the defense plan to not include good military character evidence had been discussed with him.[5]

Whether it had been discussed with him or not is not the critical inquiry. The issue is whether the decision to forgo putting on this evidence on the merits had a reasonable, tactical basis. While appellant may now disagree with the decision in retrospect, it did not fall below *Strickland's* objective standard of reasonableness.

### *"Other Acts" Evidence*

■ Appellant also alleges that his counsel were ineffective because they did not pursue a motion *in limine* to prevent the members from hearing DM's testimony on explicit sexual conversations appellant had with her. As with the issue relating to appellant's pretrial statements, appellant is required to demonstrate a reasonable probability that this motion would have been meritorious.

Appellant testified that he was shown a faxed memorandum to Ms. Eddie–Callagain from trial counsel on the day of trial, January 23, 1996. The memorandum gave notice, required by Mil.R.Evid. 404(b), Manual for Courts–Martial, United States (1995 ed.),[6] that trial counsel intended to use prior sexually explicit statements of appellant to his daughter by having her testify about them at trial. Specifically, the notice indicated that testimony would be adduced from DM regarding conversations appellant had with her "that focused on her orgasms with her boyfriend" and the reason why appellant masturbated. Ms. Eddie–Callagain testified that she did not remember receiving the memo before trial. Maj Castro testified that he probably received the memo and discussed it with appellant. However, he also testified that he was probably aware of this information prior to trial.

Regardless of the exact circumstances regarding receipt of the 404(b) notice, neither counsel offered a persuasive tactical reason for not filing the motion. Maj Castro testified that based on his previous experience before this military judge, this evidence would probably have been admitted on the issue of intent. This, however, was his retrospective view at the time of the *DuBay* hearing of what the military judge might have done at the time of trial. Whether this particular trial judge would have admitted the evidence or not, appellant has at least a colorable claim regarding the motion since the record does not indicate the statements in question had any temporal nexus to the offenses that took place in DM's bedroom on the night of September 7, 1995.

However, we need not assess counsel's performance on this issue because we are satisfied that appellant has not shown the requisite prejudice under *Strickland* and *Polk*. DM's testimony regarding the statements in question was as follows:

Q: Did [appellant] ask you something about your and [your boyfriend's] physical relationship?

A: Yes.

Q: And what was that?

A: He asked me if—if—he made me c**.

Q: You understood that he meant orgasm, right?

A: Yes.

Q: How about his sexual relationship with his wife? Did he ever talk about that with you?

A: Yeah.

APP: Can you repeat that question, Sir?

TC: Captain Castro was telling the truth when he said that as of 18 January the plan included that there would be no presentation of good military character evidence on the merits, isn't that true?

APP: I believe Captain Castro. Yes, Sir.

---

5. The record reflects the following:

   TC: Do you think that Captain Castro was lying when he said that you and he and Ms. Eddie–Callagain had a specific final decision made on that day about what the plan of approach would be in this particular case?

   APP: Yeah, we had talked about a defense.

   TC: And he was telling the truth when he said that the plan involved no good military character evidence, isn't that true?

6. The current version of this Manual provision is identical to the one in effect at the time of appellant's court-martial.

* * *

Q: Did he say whether he masturbates?

A: Yes.

The remainder of DM's testimony went into detail concerning how appellant came to her room, kissed her, and touched her breast the way her boyfriend would. She further testified how upset she became and decided that she could not remain in the house that night. The emotional nature of this testimony, which the members were able to directly observe, is suggested by defense counsel's offer of a Kleenex to the witness before beginning cross-examination.

As for appellant's admissions, we have already concluded that the defense team's decision to forgo a motion to suppress them was not deficient performance since such a motion would have lacked merit. The members heard the investigator testify that appellant admitted in the interview to touching his step-daughter's breast and being sexually attracted to her. He also testified that appellant expressed his desire to have sexual intercourse with his step-daughter.

Cumulatively, DM's testimony as to what happened in her bedroom and appellant's admissions during his interview, when weighed against DM's references to appellant's sexually explicit remarks, convince us that there is no reasonable probability that had the statements been excluded, the fact-finder would have had a reasonable doubt regarding appellant's guilt.

*Failure to Make an Opening Statement*

██ Appellant claims that his counsel's failure to make an opening statement on his behalf also constituted ineffective assistance of counsel. While it is unusual to forgo an opening statement, it is not ineffective assistance to do so in certain circumstances. In *United States v. Lorenzen*, 47 MJ 8, 12 (1997), this Court found that a defense counsel who did not make an opening statement when his client refused to testify was not ineffective because his trial strategy depended on his client's testimony. In *Lorenzen*, defense counsel reserved his opening statement for the beginning of the defense case but then waived it when his client refused to testify at the last moment.

In this case, the planned trial strategy was to not have appellant testify, not put on evidence, and not attack DM's credibility. Ms. Eddie–Callagain did not make an opening statement but reserved the right to do so at the conclusion of the Government's case. She testified at the *DuBay* hearing that she hoped as the prosecution case progressed, there would be "some miracle or something that would give us something to put on a defense case," such as appellant deciding to testify, in which case she would then make an opening statement.

This is not to say that appellant's counsel failed to present his defense to the members. Defense counsel expressed appellant's position in her closing. She argued that the touching could be viewed as a misunderstanding and that there was not enough evidence to find guilt beyond a reasonable doubt. An opening statement in this case would not have been followed by any evidence. Although appellant argues that good military character evidence could have been used, as discussed above, the defense made a strategic decision to use that evidence at sentencing. In light of the evidence against appellant discussed above, we hold that even if his counsel had made an opening statement, there is not a reasonable probability that the members would have had a reasonable doubt regarding his guilt.

The decision of the United States Air Force Court of Criminal Appeals dated July 7, 2000, is affirmed.