*This opinion is subject to administrative correction before final disposition.*

# United States Navy-Marine Corps Court of Criminal Appeals

Before
WOODARD, HITESMAN, and ATTANASIO
Appellate Military Judges.

_____

**UNITED STATES**
Appellee

**v.**

**Calvin J. COBB**
Aviation Electronics Technician Third Class (E-4), U.S. Navy
Appellant

**No. 201700356**

Decided: 20 May 2019.

Appeal from the United States Navy-Marine Corps Trial Judiciary, Military Judge: Captain Robert J. Crow, JAGC, USN. Sentence adjudged 16 August 2017 by a general court-martial convened at Naval Station Mayport, Florida, consisting of officer members. Sentence approved by convening authority: reduction to E-1, forfeiture of all pay and allowances,[1] confinement for six months, and a bad-conduct discharge.

For Appellant: Lieutenant Commander Jeremy J. Wall, JAGC, USN.

For Appellee: Lieutenant Clayton S. McCarl, JAGC, USN; Captain Sean M. Monks, USMC.

Chief Judge WOODARD delivered the opinion of the Court, in which Judges HITESMAND and ATTANASIO joined.

_____

[1] As an act of clemency, the convening authority suspended all forfeitures.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

WOODARD, Chief Judge:

The appellant was convicted, contrary to his pleas, of receiving and distributing child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2016). Pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1992), he raises a single assignment of error alleging his trial defense counsel (TDC) was deficient. After careful consideration of the record of trial and the pleadings of the parties, we find no error materially prejudicial to the substantial rights of the appellant and affirm the findings and sentence.

## I. BACKGROUND

In September 2015, Homeland Security Investigations (HSI) began investigating a mobile messaging application account holder with the user name of TomMcClain317 for sending and receiving child pornography. HSI agents were able to trace the TomMcClain317 account to an individual named Travis Spradlin. On 29 September 2015, HSI agents obtained and executed a warrant to search Mr. Spradlin's home. The search resulted in the seizure of multiple electronic media storage devices and several cellular telephones. The forensic examination of one of the seized cellular telephones revealed messages and image files that Mr. Spradlin had exchanged with another mobile messaging application account holder utilizing the user name Karu961. Of the images exchanged between Mr. Spradlin and Karu961, many were of child pornography. HSI agents were able to trace the Karu961 user name to an internet protocol (IP) address associated with at the appellant's residential address. The appellant was subsequently brought in for questioning.

On the date the appellant was brought in for questioning, he had previously planned to attend a medical appointment for his wife. The appellant's interview was conducted by a Naval Criminal Investigative Service (NCIS)

and an HSI agent. Before questioning began, the agents made it clear to the appellant that he was not under arrest or charged with a crime at that time. The appellant was, however, made aware that he was suspected of "use, possession, [and] distribution of child pornography."[2] The NCIS agent informed the appellant of his Article 31(b), UCMJ, rights by utilizing a standard Acknowledgment of Rights form. To ensure that the appellant understood his Article 31(b), UCMJ, rights, the NCIS agent had the appellant read aloud each right and place his initials after each right if he understood the right. The appellant did so indicating that he understood each Article 31(b), UCMJ, right—including his right to remain silent, his right to an attorney, and his right *to terminate the interview at any time for any reason.*[3] The appellant then waived his Article 31(b), UCMJ, rights and agreed to speak with the agents. Additionally, the HSI agent informed the appellant of his *Miranda* rights. The appellant again acknowledged that he understood his *Miranda* rights—to include his right to remain silent, right to an attorney, and to stop the questioning at any time—and signed a separate form indicating his understanding and waiver of his *Miranda* rights.[4]

The interview was digitally recorded and a redacted version was entered into evidence as Prosecution Exhibit 6. Throughout the interview the appellant answered the agents' questions—never invoking his right to remain silent or to terminate the interview. During the interview, the appellant admitted that he was Karu961, and that he had exchanged messages and child pornography with TomMcClain317 over the mobile messaging application. The appellant explained in detail the websites from which he had obtained the child pornography he sent to TomMcClain317; described the steps he took to begin messaging with TomMcClain317; and explained the method by which he exchanged the child pornography images and his motivations for doing so. At the end of the questioning, the agents requested and the appellant consented to a forensic examination of his cellular telephone.[5]

---

[2] Prosecution Exhibit (PE) 6, Recording of NCIS Interview, at 8:06.

[3] *Id*. at 9:25 (emphasis added).

[4] *Id*. at 8:06.

[5] The forensic examination of the appellant's cellular telephone revealed no incriminating evidence. However, in his interview, the appellant acknowledged that he had used a different cellular telephone that he no longer possessed to send and receive the messages and images with TomMcClain317.

On appeal, the appellant submitted two post-trial sworn affidavits for consideration by this Court alleging for the first time that his statement to the NCIS and HSI agents was false and involuntary. The first affidavit, written by the appellant, asserts that he gave a false confession in order to end the interview so that he could attend his wife's medical appointment. The second affidavit, written by the appellant's wife, states that the appellant told her he falsely confessed in an effort to get to her medical appointment. She also complains that the appellant's appointed psychiatric expert consultant, who had evaluated the appellant and who attended the trial, was never called to testify.

## II. DISCUSSION

In his sole assignment of error the appellant complains that his TDC was ineffective for failing to challenge the admissibility of the appellant's statement to the NCIS and HSI agents. We review claims of ineffective assistance of counsel *de novo*. *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018). In conducting our analysis, we look to the test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that his deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687). The appellant bears the "burden of establishing the truth of factual matters relevant to the claim." *Denedo v. United States*, 66 M.J. 114, 128 (C.A.A.F. 2008), *aff'd*, 556 U.S. 904 (2009).

### A. Further Fact-Finding Not Required

After considering the record and the affidavits provided, we must first determine if additional factfinding is necessary to resolve the appellant's claim of ineffective assistance of counsel. We conclude that additional factfinding is not necessary.

"If there is a factual dispute on a matter pertinent to [a] claim, the determination as to whether further factfinding will be ordered is resolved under *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997)." *Id.* "[A] post-trial evidentiary hearing . . . is not required in any case simply because an affidavit is submitted by an appellant." *Ginn* 47 M.J. at 248. Adapting the rule utilized by federal civilian courts, the Court of Appeals for the Armed Forces (CAAF) held that a factfinding hearing "need not be ordered if an appellate court can conclude that 'the motion and the files and records of the case . . . conclusively show that [an appellant] is entitled to no relief.'" *Id.* at 244 (alterations in original) (quoting *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986)).

In this case, the affidavits consist primarily of "speculative and conclusory observations" and the few facts alleged therein "allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor." *Ginn* 47 M.J. at 248. We conclude that the record "conclusively show[s] that [the appellant] is entitled to no relief." *Id.* at 244. Accordingly, further factfinding is not necessary.

## B. Ineffective Assistance of Counsel

The appellant asserts that his TDC was ineffective for two related reasons: (1) because his TDC failed to move to suppress his incriminating statement on voluntariness grounds, and (2) because his TDC did not offer the testimony of the appointed expert at trial to challenge the reliability of his statement.

In analyzing *Strickland*'s first prong, an attorney's representation is deficient when it falls "below an objective standard of reasonableness." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). Deficiency is not based on the success of the strategy, but rather the reasonableness of the strategy. *Id.* "[C]ourts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 689). Our scrutiny of TDC's performance is "highly deferential," as counsel have "wide latitude . . . in making tactical decisions." *Strickland*, 466 U.S. at 689.

However, we need not determine "whether counsel's performance was deficient before examining the prejudice suffered by the [appellant] as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 697. When an ineffective assistance of counsel claim is based on a failure to make a motion to suppress evidence, "an appellant must show that there is a reasonable probability that such a motion would have been meritorious." *United States v. McConnell,* 55 M.J. 479, 482 (2001) (quoting *United States v. Napoleon*, 46 M.J. 279, 284 (1997)); *see also United States v. Harpole,* 77 M.J. 231, 236 (2018).

### 1. Motion to suppress statement to the NCIS and HSI agents

The appellant fails to meet his burden of showing a motion to suppress his statement on voluntariness grounds would have been meritorious. Alt-

hough appellant states in his affidavit that "[his] admission during [his] interview with NCIS was not voluntary,"[6] we find the record overwhelmingly controverts this claim. To be voluntary, confessions must be "the product of an essentially free and unconstrained choice by its maker." *United States v. Bubonics*, 45 M.J. 93, 95 (C.A.A.F. 1996). "A confession is involuntary, and thus inadmissible, if it was obtained 'in violation of the self-incrimination privilege or due process clause of the Fifth Amendment to the Constitution of the United States, Article 31, or through the use of coercion, unlawful influence, or unlawful inducement.'" *United States v. Freeman,* 65 M.J. 451, 453 (C.A.A.F. 2008) (quoting MILITARY RULE OF EVIDENCE 304(a)(1)(A), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.)). The totality of the circumstances must be examined to determine whether the appellant's will was over-borne. *Id.* Some factors relevant to the analysis include: age and education of the appellant; whether the appellant was advised of his rights; length of detention; nature of the questioning; use of physical punishment; and use of lies, threats, or promises. *Id.* at 453-54.

The appellant was a 24-year-old high-school graduate when questioned by the agents. As a third class petty officer with seven years of service in the United States Navy, he had successfully completed multiple service schools and ratings qualifications—including being qualified as an enlisted air warfare specialist. At the time the appellant made the statement, he was not under any form of restraint or detention. The questioning was of relatively short duration—approximately one hour and forty minutes. Prior to making the statement, the appellant was advised of not only his Article 31(b), UCMJ, rights, but also his *Miranda* rights. He affirmed that he understood these rights and affirmatively waived them. Review of the recorded interrogation reveals the agents were well-mannered when questioning the appellant. They did not lie, threaten, or promise anything to the appellant. Further—despite knowing that his wife was expecting him to accompany her to her medical appointment and knowing that he had the right to terminate the questioning at any time—at no point during the questioning did the appellant ask to end the questioning. No *facts* in the affidavits or our review of the record below suggest the statement was involuntary. The appellant's assertion that his confession was false and not voluntary is his own subjective and self-serving opinion. "Without more, appellant has failed to show a reasonable probability that a motion to suppress this evidence would have been meritorious." *McConnell,* 55 M.J. at 482.

---

[6] Affidavit of Appellant of 2 Apr. 2018.

*2. Use of expert witness to challenge the credibility of the appellant's statement*

The appellant avers that his TDC's failure to call the expert consultant as a witness at trial to challenge the credibility of his statement to the agents amounts to deficient performance. We disagree.

The appellant asserts in his brief that his appointed psychiatric expert consultant had found him to be "unusually pliable and prone to stress."[7] Aside from the assertion of the appellant's wife in her affidavit, there is no evidence in the record of such findings by the expert consultant. The expert consultant never testified during the trial process, nor did the expert consultant submit for our consideration an affidavit attesting to such findings.

Counsel can formulate reasonable trial strategies even if it means ignoring experts "whose insight might possibly have been useful." *United States v. Akbar*, 74 M.J. 364, 381 (C.A.A.F. 2015) (citing *Harrington v. Richter,* 562 U.S. 86, 107 (2011)). "Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012)

However, we need not determine whether TDC's strategy was objectively reasonable. Even assuming, *arguendo*, that the expert consultant did find the appellant to have a pliable nature and was prone to stress and that his TDC had no objectively reasonable strategy for not calling the expert to testify, the appellant fails to demonstrate any prejudice. The appellant has failed to demonstrate a reasonable probability that had his TDC called the expert at trial, "the panel members would have harbored a reasonable doubt respecting guilt." *Datavs,* 71 M.J. at 425; *see also Akbar,* 74 M.J. at 371-72. We will not speculate as to which parts of the appellant's statement the expert would assert are unreliable or how the appellant's pliable nature and level of stress impacted his statement. In contrast, we observe numerous indicia of reliability throughout his statement. The appellant's statement included significant, specific details that would require independent knowledge of facts of the offenses not mentioned by the agents, such as the websites from which a number of child pornography images were obtained and the manner in which the appellant first sought out TomMcClain317. Given these facts, we are confident that there is no reasonable probability that the expert testimony

---

[7] Appellant Brief of 4 Apr 2018 at 8 (citing to Affidavit of appellant's wife of 2 Apr. 2018).

now desired by the appellant would have altered the members' verdicts or the punishment they imposed.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to appellant's substantial rights occurred. Arts. 59 and 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

Judge HITESMAN and Judge ATTANASIO concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court