# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BROOKHART, SALUSSOLIA, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Captain JOSEPH L. SIMMONS**
**United States Army, Appellant**

ARMY 20180061

Headquarters, 25th Infantry Division
Kenneth W. Shahan, Military Judge
Lieutenant Colonel Howard T. Matthews, Jr., Acting Staff Judge Advocate

For Appellant: Lieutenant Colonel Todd W. Simpson, JA; Captain Augustus Turner, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Virginia Tinsley, JA; Captain Brian Jones, JA (on brief).

22 October 2019

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BROOKHART, Judge:

Contrary to his pleas, a panel of officers convicted appellant of one specification of violating a lawful general regulation,[1] one specification of sexual assault of a child, one specification of sexual abuse of a child, and one specification of obstructing justice, in violation of Articles 92, 120b, and 134, Uniform Code of

---

[1] The panel originally entered guilty findings for two specifications of violating a lawful general regulation in violation of Article 92, UCMJ. However, after findings but before sentencing, the military judge dismissed one specification of violating a lawful general regulation, pursuant to a defense motion, for failing to state an offense.

Military Justice, 10 U.S.C. §§ 892, 920b, and 934 [UCMJ].[2] Appellant was sentenced to be dismissed from the service and to be confined for one year and six months. The convening authority approved the sentence as adjudged.

This case comes before us for review under Article 66, UCMJ. Appellant raises three assignments of error: first, that he was denied effective assistance of counsel because his trial defense counsel did not move to suppress DNA evidence; second, that his conviction for violating a lawful general regulation was legally and factually insufficient; and finally, that he is entitled to relief for dilatory post-trial processing. The first two issues raised by appellant merit discussion, but none merit relief.[3]

## BACKGROUND

### A. Appellant's Relationship with Staff Sergeant AD and Her Children

In 2013, appellant, then a Captain, became involved in a relationship with an enlisted member, Staff Sergeant (SSG) AD, while both were stationed at Fort Huachuca, Arizona. Staff Sergeant AD had three children from a prior marriage; two daughters, AB and KB, and a son, CB. Appellant got to know and grew close to all three children over the course of his relationship with SSG AD. The relationship eventually ended and both parties continued with their military careers at different installations. In the summer of 2016, appellant and SSG AD found themselves both stationed in Hawaii, although in separate commands. Appellant reached out to SSG AD and attempted to rekindle their relationship. When SSG AD rebuffed his efforts, appellant asked if he could still spend time with SSG AD's children who were all under the age of sixteen years at the time. Staff Sergeant AD agreed, and appellant thereafter spent substantial time with SSG AD's children, such as taking the three children to the beach and the movies, as well as other activities throughout the remainder of the summer and into the fall.

Shortly after her arrival in Hawaii, SSG AD received orders to attend a two-month resident career development course at Fort Jackson, South Carolina. The course was scheduled to run from October to December. As a single mother with no relatives in Hawaii, SSG AD struggled to find someone to care for her children while she attended the course. Appellant was aware of the situation and volunteered

---

[2] The panel also acquitted appellant of five specification of sexual abuse of a child, in violation of Article 120b, UCMJ.

[3] We have also considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they merit neither discussion nor relief.

to care for the children while she attended the course. Staff Sergeant AD ultimately agreed. To facilitate the arrangement, SSG AD obtained a power of attorney and designated appellant as a caregiver under her Family Care Plan. Appellant also signed a document agreeing to accept responsibility for the children. In completing the paperwork, SSG AD was careful not to disclose appellant's rank because she understood the rank disparity would be an issue.

After SSG AD departed for Fort Jackson, the children would sometimes stay at appellant's off-post apartment and sometimes appellant would stay with them in SSG AD's quarters. When appellant went to SSG AD's quarters, he would park in SSG AD's garage so he would not be identified as an officer in an enlisted neighborhood. While she was at the course, SSG AD communicated with appellant and her children via text message and over a video calling application. Over time, appellant became frustrated with the children's behavior and threatened to end the caregiver arrangement. The exchanges between the two on the issue of the children's behavior were sometimes heated. At one point, SSG AD contacted her ex-husband to come to Hawaii and take-over for appellant. Ultimately, the ex-husband failed to show-up and appellant agreed to continue as caregiver.

### B. CN's Sexual Misconduct Allegations Against Appellant

CN was a fourteen-year-old friend and neighbor of SSG AD's oldest daughter, AB. CN spent a lot of time with AB and was frequently around appellant as a result. On Thanksgiving 2016, CN and SSG AB's son, CB, spent the night at appellant's apartment while AB and KB stayed elsewhere. CN alleged that while she was sleeping on appellant's couch, she awoke to find appellant touching her vaginal area with his toes. When she realized what was happening, CN repositioned herself and pretended to be on her phone. Eventually, she fell back asleep. Later that night, CN awoke to find appellant digitally penetrating her vagina. CN got up off the couch and went into the bathroom where she texted AB and her mother to come and get her from appellant's apartment. CN disclosed appellant's sexual misconduct to her mother who in turn took her to a medical clinic, where local and military law enforcement were alerted.

### C. Evidence Collection and DNA Testing

Prior to going to the clinic with her mother, CN changed out of the clothes she was wearing during the sexual assault and left those clothes at her house. While she was at the clinic, Special Agent (SA) CL-M asked CN's mother to go and retrieve the clothing CN wore during the sexual assault. CN's mother left and retrieved the clothing which consisted of a shirt, a pair of shorts, and a pair of underwear. She placed the clothing in a paper shopping bag and then delivered the bag to SA CL-M. Special Agent CL-M then transported the bag to the Criminal Investigation Command (CID) office as evidence. Because the alleged incident occurred on a

3

holiday weekend, the evidence was secured in a locker outside the evidence room, where it remained for several days. The next duty day, SA CL-M retrieved the bag from the locker, placed the clothes and shopping bag in a larger evidence bag, sealed it, and submitted the bag to the evidence custodian, who sent off the items for testing.

DNA testing revealed appellant's DNA on the inside of CN's shorts in the area of the crotch. There was also a sample of DNA found on the inside of CN's underwear which could not exclude appellant or one of his male relatives as contributors. Appellant's DNA was not found on vaginal swabs taken from CN, and CN's DNA was not found on appellant's fingers or under his finger nails.

At trial, appellant's trial defense counsel did not move to suppress the DNA evidence offered by the government. Rather, through cross-examination of the foundational witnesses, defense counsel vigorously attacked the collection and handling of the CN's clothing, highlighting CID's failure to follow a number of their own procedures. In opening and closing, trial defense counsel argued that the DNA evidence linking appellant to the charged conduct was not reliable because CN's clothing was contaminated with DNA transferred from appellant's couch due to mishandling. At the same time, defense counsel argued that the absence of appellant's DNA in CN's vagina and the absence of CN's DNA on appellant's fingers indicated that her version of events was false. Nonetheless, appellant was convicted of the two specifications related to his sexual misconduct against CN.

On appeal, appellant contends that his defense team was ineffective for not moving to exclude the results of the DNA testing. Appellant further contends that the evidence is legally and factually insufficient to sustain his conviction violating Army Reg. 600-20, Army Command Policy, para. 4-14 (6 Nov. 2014) [AR 600-20], by having an inappropriate relationship with SSG AD. We disagree with appellant on both issues, and discuss each in turn.

**LAW AND DISCUSSION**

*A. Ineffective Assistance of Counsel*

Allegations of ineffective assistance of counsel involve mixed questions of law and fact, but questions of deficient performance are reviewed de novo. *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012).

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel for his defense. *United States v. Cronic*, 466 U.S. 648, 653-656 (1984). In evaluating allegations of ineffective assistance of counsel, courts apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This requires an appellant to demonstrate: (1) that counsel's performance was deficient;

and (2) that this deficiency resulted in prejudice. *Id.* at 687. The proper inquiry under the first prong is whether counsel's conduct fell below an objective standard of reasonableness, or was outside the "wide range of professionally competent assistance." *Id.* at 690. The second prong is satisfied by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

On appellate review, there is a strong presumption that counsel were competent. *United States v. Grigoruk*, 56 M.J. 304, 306-07 (C.A.A.F. 2002) (citing *Strickland*, 466 U.S. at 689). Strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Dewrell*, 55 M.J. 131, 133 (C.A.A.F. 2001) (citing *Strickland*, 466 U.S. at 690). The analysis of counsel's strategic decisions is not focused on results at trial, but rather on the objective reasonableness of counsel's strategy weighed against available alternatives. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citations omitted). Additionally, when a claim of ineffective assistance is based on the failure to make a suppression motion, appellant must demonstrate that there was a reasonable probability that the motion would have been successful. *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citing *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997)).

In this case, appellant argues that trial defense counsel should have moved to exclude the DNA evidence on grounds of improper collection and handling of the source evidence prior it's testing, rather than on the process or reliability of the DNA testing itself. This claim fails to meet the two-prong *Strickland* standard because appellant cannot show a reasonable probability that a motion to suppress the DNA evidence would have been successful. DNA evidence is generally admissible in courts-martial if a proper foundation is established. *United States v. Allison*, 63 M.J. 365, 369 (C.A.A.F. 2006) (citing *United States v. Youngberg*, 43 M.J. 379, 386 (C.A.A.F. 1995)). The failure to observe collection protocols and the resulting potential for contamination do not, in and of themselves, render DNA evidence inadmissible. Indeed, "the great weight of previous precedent indicates that cross-examination, not exclusion, is the proper province for a contamination inquiry." *United States v Morrow*, 374 F.Supp. 2d 42, 49 (D.D.C. 2005) (citations omitted).

Given that any potential issues with the DNA evidence in this case related to the collection procedures rather than scientific nature of the testing itself, there is no reasonable probability that the evidence would have been excluded had such a motion been filed at trial. Instead of filing a motion not supported by the law, defense counsel made the reasonable, tactical decision to attack the collection process throughout the trial. In his opening statement, trial defense counsel highlighted errors in the collection process and honed in on their unreliability. During trial, defense counsel attacked the collection and handling by thoroughly cross-examining numerous government witnesses on the handling of the source

evidence. Finally, trial defense counsel used the concessions won on cross-examination to support his closing argument that the presence of appellant's DNA on the inside of CN's shorts, and the possible presence of his DNA on her underwear, were the result of contamination invited by improper collection. This approach allowed defense counsel to challenge the reliability of the DNA results which hurt appellant, while still highlighting the DNA evidence that was more beneficial to his case. As such, we find that defense counsel's approach was legally sound under all the circumstances and did not deprive appellant of his right to a fair trial.

Having found trial defense counsel's performance objectively reasonable, there is no need to address the second prong of *Strickland*. Accordingly, appellant has failed to demonstrate he was denied effective assistance of counsel.[4]

## B. Legal and Factual Sufficiency

This Court holds findings of guilt legally sufficient when any rational fact finder "could have found all essential elements of the offense beyond a reasonable doubt." *United States v. Nicola*, 78 M.J. 223, 226 (C.A.A.F. 2019) (citations omitted). In conducting our legal sufficiency review, we are obligated to draw "every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Robinson*, 77 M.J. 294, 298 (C.A.A.F. 2018) (citations omitted). "As such, the standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation and internal marks omitted).

With regard to factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). We may not affirm a conviction unless, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are

---

[4] Under the circumstances of this case, we see no need to order a fact finding hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967) because the record is replete with evidence that the defense team's strategy was to challenge the reliability of the DNA collection. Further, of appellant's two affidavits submitted in this case, only one possibly relates to a claim of ineffective assistance of counsel. *See* Def. App. Ex. B. However, appellant's affidavit possibly related to ineffective assistance of counsel addresses an issue appellant raised pursuant to *Grostefon* rather than the suppression of the DNA evidence. Accordingly, the factors discussed in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), are not implicated for the DNA suppression issue, and the first *Ginn* factor allows this Court to proceed in deciding the *Grostefon* issue without a post-trial evidentiary hearing.

personally convinced beyond a reasonable doubt of appellant's guilt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

In this case, Specification 1 of Charge II alleged that appellant violated paragraph 4-14 of AR 600-20 by having an inappropriate relationship with SSG AD between on or about 1 October 2016 and on or about 31 November 2016. Appellant contends the evidence is both legally and factually insufficient to sustain his conviction for violating Article 92, UCMJ. Specifically, that during the charged timeframe, his actions consisted only of caring for SSG AD's children, which is not prohibited by the paragraph 4-14 of AR 600-20. We disagree.

Paragraph 4-14.b.(1)-(5), AR 600-20, lists five broad circumstances in which relationships between soldiers of different ranks are always prohibited.[5] Moreover, the preceding language in paragraph 14-4.b. sets up a catchall prohibition which prohibits other improper relationships which are not specifically listed. That section states that "Soldiers of different grades must be cognizant that their interactions do not create an actual or clearly predictable perception of undue familiarity . . ." AR 600-20, para. 4-14.b. Repeated visits to homes between officer and enlisted members is provided as an example of an interaction that may create a clearly predictable perception of undue familiarity. *Id.*

In this case, the evidence presented at trial showed that during the charged timeframe, but prior to SSG AD's departure for South Carolina, appellant regularly coordinated with SSG AD in order to spend time with her children. To execute these interactions, appellant came to SSG AD's home or SSG AD traveled to appellant's home to exchange the children. Appellant frequently asked SSG AD to accompanying them on their activities, and appellant routinely told SSG AD that he loved her.

The evidence also showed that appellant repeatedly offered to serve as caretaker for SSG AD's children while she was gone for the two-month course. When SSG AD finally agreed, she completed the necessary paperwork to allow appellant to care for the children. In doing so, SSG AD was aware she needed to avoid revealing appellant's rank. Appellant also signed documents accepting responsibility for SSG AD's children and had it notarized by a civilian notary.

---

[5] "All relationships between Soldiers of different grade are prohibited if they—(1) Compromise, or appear to compromise, the integrity of supervisory authority or the chain of command. (2) Cause actual or perceived partiality or unfairness. (3) Involve, or appear to involve, the improper use of grade or position for personal gain. (4) Are, or are perceived to be, exploitive or coercive in nature. (5) Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the command to accomplish its mission." AR 600-20, para. 4-14.b.(1)-(5).

There was evidence that appellant was also aware of the need to disguise his rank when he was at SSG AD's quarters. Finally, before her departure, appellant met in person with SSG AD and the children to establish his ground rules for supervising the children.

Once SSG AD departed, the evidence showed that appellant spent some nights sleeping in her quarters with the children and brought them to his apartment on other nights. One witness familiar with the arrangement testified that he believed appellant was SSG AD's boyfriend. Further, SSG AD testified that while she was in South Carolina, she texted with appellant or they spoke over the phone about the children. During these calls and texts, SSG AD referred to appellant by his first name, rather than his rank, and he did the same with regard to SSG AD. Moreover, when disputes arose about SSG AD's children, they argued with each other in an equally abrasive manner that demonstrated no regard for their rank disparity. Staff Sergeant AD testified that she believed one such dispute arose because appellant was jealous of her relationship with another soldier in the course. Finally, when confronted by CN's parents about the sexual abuse allegation, appellant repeatedly stressed his rank, knowing that CD's father was an enlisted member.

All of this evidence was more than enough to allow a reasonable fact finder to find beyond a reasonable doubt that appellant's relationship with SSG AD was unduly familiar in violation of either paragraph 4-14.b.'s general prohibition or of the specific prohibition against relationships which create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the command to accomplish its mission. *See* AR 600-20, para. 4-14.b.(5). Moreover, having reviewed all of the evidence and making the appropriate allowances, we too are convinced, beyond a reasonable doubt, of appellant's guilt for violating paragraph 4-14.b. of AR 600-20.

## CONCLUSION

For the reasons stated above, we find appellant's assignments of error to be without merit. Accordingly, upon consideration of the entire record, the findings and sentence are AFFIRMED.

Judge SALUSSOLIA and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court