# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, HAYES, and POND
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class JAMEL I. WALKER**
**United States Army, Appellant**

ARMY 20220125

Headquarters, 7th Infantry Division
Jessica R. Conn, Military Judge
Colonel Robert A. Rodrigues, Staff Judge Advocate

For Appellant: Colonel Michael C. Friess, JA; Major Mitchell D. Herniak, JA; Major Bryan A. Osterhage, JA; Captain Sean P. Flynn, JA (on brief); Colonel Philip M. Staten, JA; Major Mitchell D. Herniak, JA (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Major Timothy R. Emmons, JA; Mr. Zachary M. Griffith (on brief).

22 January 2024

------------------------------------
SUMMARY DISPOSITION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Senior Judge:

Appellant raises two issues before this court, neither of which merit discussion or relief. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant asserts five errors before this court, one of which merits discussion but no relief.[1]

Appellant argues his defense counsel were ineffective for requesting a trial continuance when they knew or should have known the government "was sitting –

---

[1] We have given full and fair consideration to the remaining issues personally raised by appellant before this Court pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they warrant neither discussion nor relief.

*unknowingly* – on damning information" of which the government "had not *notified*" defense counsel.

Appellant alleges his counsel's failure to demand speedy trial, or to proceed to a contested trial on the initially scheduled date, allowed "the government time to find" this "damning information" and to "use it to great effect against" him. As explained below, we find appellant's counsel were not ineffective.

## BACKGROUND

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of making a false official statement as well as one specification each of rape, sexual assault,[2] and aggravated sexual contact upon Staff Sergeant (SSG) ███ in violation of Articles 107 and 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 907, 920. The military judge sentenced appellant to a dishonorable discharge, confinement for five years and thirty days, total forfeiture of all pay and allowances, and reduction to the grade of E-4. The convening authority took no action on the findings and sentence.

In early October 2020, SSG ███ accused appellant of committing unwanted sexual acts against her. Within days of SSG ███'s report to law enforcement, appellant consented to a full extraction of his cell phone.

As the allegations against appellant's counsel surround the timeliness of their actions, we provide the following relevant dates regarding the case:

12 August 2021: Charges preferred.

23 September 2021: Referred charges served on appellant.

6 October 2021: Appellant arraigned (contested trial docketed for 8 November 2021).

12 October 2021: Defense filed request with government for DNA expert consultant.

20 October 2021: Government approved defense DNA expert consultant.

---

[2] The military judge dismissed the sexual assault specification contingent upon the rape specification surviving appellate review.

22 October 2021: Defense filed continuance motion unopposed by government; contested trial rescheduled to the first date of availability of the parties and DNA expert consultant (7 March 2022).[3]

In November 2021, the government trial counsel began reviewing text messages from the full extraction of appellant's entire phone to allegedly "search for rebuttal witnesses" in response to the defense witness list naming people who could testify to appellant's character trait of respectfulness towards women. Government counsel described the full extraction of appellant's phone as containing "numerous gigabytes of data" and "[h]undreds, and hundreds, and hundreds of messages." Government counsel saw several texts messages between appellant and SSG ██, who was referred to in appellant's phone as "████████."

As the trial counsel continued to review the evidence, however, he uncovered messages from the identical timeframe from what appeared to be a different woman, who was referred to as "███." It appeared the unknown "██," in addition to SSG ██ ("████████"), had had a negative sexual experience with appellant within approximately a day or two of each other. The government search for the unknown "██" commenced.

The search began by attempting to call the relevant phone number, then a LexisNexis person search of the phone number, and ultimately concluded with the assistance of Criminal Investigation Division (CID) Special Agents (SAs) employing facial recognition software on a picture of "██." The software identified five to ten possible women, whom SAs began calling, ultimately reaching appellant's "██," who was named ██ on 18 January 2022. ██ agreed to an interview with CID SAs on the evening she was contacted.

Two days later, government counsel filed a motion under Military Rule of Evidence (Mil. R. Evid.) 413 seeking to admit ██'s testimony regarding unwanted sexual acts by appellant within approximately one or two days of the charged offenses regarding SSG ██. See Mil. R. Evid. 413. After a motion hearing, the military judge ruled ██'s testimony was admissible under Mil. R. Evid. 413.[4]

---

[3] Beyond the continuance motion, defense counsel filed additional motions, to include a motion to compel discovery. This motion sought, among other things, a "USACIL litigation packet for the DNA testing performed in this case" and the receipt of multiple documents regarding SSG ██'s military files.

[4] Appellant asserted the military judge abused her discretion by finding good cause existed for the government to file a Mil. R. Evid 413 motion more than five days after the entry of appellant's plea to the military judge on 9 November 2021. We

(continued . . .)

Despite making a statement to CID SAs, ██ initially declined to further participate in the investigation. She admitted she had never reported appellant's unwanted sexual acts to law enforcement and wavered whether she would testify even if issued a subpoena but, ultimately, testified at the contested trial regarding appellant's unwanted sexual acts against her.

Now, on appeal, appellant asserts ██, who was uncovered by the government counsel after his review of appellant's text messages (the "damning information") in November 2021, would have never been discovered or, more importantly, testified "to great effect against [him]," if his defense counsel had not requested a continuance of the initially scheduled contested trial date of 8 November 2021.

## LAW AND DISCUSSION

We review claims of ineffective assistance of counsel de novo. *United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021) (citing *United States v. Carter*, 79 M.J. 478, 480 (C.A.A.F. 2020)). Military courts evaluate ineffective assistance claims using the Supreme Court's framework from *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* "Under *Strickland*, an appellant bears the burden of demonstrating that (a) defense counsel's performance was deficient, and (b) this deficient performance was prejudicial." *Id.* (quoting *Strickland*, 466 U.S. at 687).

In evaluating performance, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689. This presumption can be rebutted by "showing specific errors [made by defense counsel] that were unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citing *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987)). With regard to defining what constitutes deficiency in a claim of ineffective assistance of counsel, the Supreme Court has stated that a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Further, a court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Even where counsel has committed an unreasonable error, it "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Appellant must "affirmatively prove prejudice." *Id.*

---

(. . . continued)
determined the military judge did not abuse her discretion, the alleged error does not warrant our further discussion, but we pause to identify that the Mil. R. Evid 413 motion hearing and military judge's ruling provided the relevant facts surrounding the government's discovery of ██

at 693. This means appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, "[t]he likelihood of a different result must be *substantial*, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693) (emphasis added). This requires consideration of "the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. In short, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Appellant's trial defense counsel's performance was not deficient from an objective standard of reasonableness. Appellant fails to establish his counsel "knew or should have known" at the time they filed a continuance motion that "damning information" of another sexual assault victim, an unknown "██" who had not reported an allegation against appellant to law enforcement for over a year, existed within the text messages from the full extraction of appellant's phone.

Appellant does not assert he told his counsel about "██" (██ or their text messages. We know the government did not know and therefore could not and did not advise defense counsel about the text messages and the unknown "██" (██) prior to defense counsel submitting their continuance motion. We now consider what, if anything, defense counsel knew or should have known based on their own investigative efforts.

It appears defense counsel received the full extraction of appellant's phone sometime in late-September 2021 to early October 2021.[5] An exact date is not relevant to our analysis because, even assuming the earliest date of late-September 2021, we are required to focus on defense counsel's entire investigative actions at the time.

When appellant's counsel filed a continuance motion, they were actively engaged in the investigation of the case, interviewing potential merits witnesses, attempting to receive military files containing potential impeachment evidence of SSG ██ and, most importantly, attempting to obtain evidence regarding DNA in the case and the funding/hiring of a DNA expert consultant. Receipt of the DNA litigation packet and an expert consultant was crucial for the defense to aid in understanding the evidence and, ultimately, cross-examining the government's DNA expert at trial. Defense counsel were zealously attempting to investigate the case

---

[5] Government counsel stated on the record that defense counsel was provided the discovery regarding appellant's phone at the time of referral (23 September 2021) but the defense continuance motion asserted receipt of "RCM 701(a)(1) and (3)" documents at arraignment (6 October 2021).

and discover evidence favorable to appellant as soon as they were entitled to request evidence and file motions with the military judge.

Even assuming arguendo defense counsel "knew or should have known" about the "damning information" of the unknown "█" on appellant's phone, it would have been substantially less reasonable to blindly proceed to a contested trial on 8 November 2021 without fully investigating the charged offenses asserted by SSG █ receiving the additional requested discovery regarding her, or possessing the DNA litigation packet or the ability to refute, with the aid of a defense DNA expert consultant, the DNA evidence in the case regarding SSG █

The decision to file a continuance and to not demand a speedy trial by defense counsel was not ineffective and fell well "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, expected of trial defense counsel. Based on the entire record, we conclude appellant has not overcome the strong presumption his defense counsel were competent.[6]

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.[7]

Judge HAYES and Judge POND concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[6] We see no need to order a post-trial evidentiary hearing pursuant to Article 66(f)(3), UCMJ and Rule for Courts-Martial 810(f)(1). *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) (stating in most instances involving an ineffective assistance claim, "the authority of the Court to decide that legal issue without further proceedings should be clear.").

[7] The Entry of Judgment is amended to reflect the date of the Statement of Trial Results correctly as "12 March 2022".