Judge EFFRON
delivered the opinion of the Court.
At a general court-martial composed of officer and enlisted members, Appellant was convicted, contrary to his pleas, of indecent acts or liberties with a child, in violation of Article 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (2000). He was sentenced to confinement for four years and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Criminal Appeals affirmed in an unpublished opinion.
We granted Appellant’s petition for review under Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3)(2000).[1] For the reasons set forth
*433 below, we hold that the military judge committed prejudicial error in his rulings related to the applicable statute of limitations.
I. BACKGROUND
Appellant was charged with one specification of rape. The panel at Appellant’s court-martial determined that he was not guilty of rape, but was guilty of a lesser-included offense, indecent acts with a child.
At the time of Appellant’s trial, the offense of rape could be tried at any time without limitation, while the offense of indecent acts was subject to a five-year statute of limitations. Article 43, UCMJ, 10 U.S.C. § 843 (2000); Willenbring v. Neurauter, 48 M.J. 152 (C.A.A.F.1998); United States v. McElhaney, 54 M.J. 120 (C.A.A.F.2000).[2] The present appeal concerns the responsibilities of the military judge when confronted by evidence that implicates the statute of limitations applicable to a lesser-included offense.
1. Preferral and referral of charges
The charge sheet in the present case contained a single specification alleging that Appellant “did, at or near Glattbach, Germany, Fort Irwin, California, and Fort Knox, Kentucky, on divers occasions on or between 1 September 1992 and 1 March 1996, rape [his stepdaughter], a person who had not attained the age of 16 years.” The summary court-martial convening authority received the charge sheet on January 3, 2000. Following consideration by superior convening authorities, the charge and its specification were eventually referred for trial by general court-martial.
2. Trial on the merits
Appellant’s stepdaughter, Ms. B, who was 20 years old at the time of trial, testified that Appellant had abused her sexually from age 5 through age 15. She stated that Appellant began touching her sexually in October 1985, about a year after her mother married Appellant. At that time, the family resided in Glattbach, Germany, where Appellant was stationed until February 1986. She added that the sexual touching progressed to anal sodomy during the family’s stay in Germany.
Appellant was transferred to Fort Polk, Louisiana, in February 1986, where he served until January 1989, accompanied by his family. Ms. B testified that the sexual abuse continued during this period. In January of 1989, Appellant was reassigned to Germany, and the family returned to Glattbach. Ms. B said that the sexual abuse continued, including an unsuccessful attempt at vaginal intercourse.
Appellant and his family subsequently relocated to Fort Irwin, California, where Appellant was stationed from March 1992 until June 1995. According to Ms. B, Appellant engaged in vaginal intercourse with her during this period. She testified that she did not tell anyone about the sexual abuse because Appellant threatened “he would have the MP’s come and take everything away from [her],” and that he would “put [her] in a home for bad kids.” Appellant moved with his family to Fort Knox, Kentucky, in June 1995. Ms. B stated that the acts of sexual intercourse continued until March 1996, when all sexual contact between her and Appellant ceased.
Three and one-half years later, in September 1999, Ms. B reported Appellant’s actions *434 to law enforcement authorities. According to her testimony at a pretrial hearing in the present case, she decided to make the September 1999 report because she feared that her younger brother might be subjected to the same abuse.
Additional evidence presented by the prosecution included the testimony of Ms. B’s former boyfriend, to whom she revealed the alleged sexual abuse in 1996, and an expert witness who testified that Ms. B’s description of the alleged sexual abuse that she suffered was consistent with cases of similar child sexual abuse. The prosecution also introduced the deposition testimony of Ms. B’s younger sister, Ms. NT, concerning an incident when they lived at Fort Irwin. In the deposition, Ms. NT stated that she had walked into a room and saw Ms. B kneeling on the floor while Appellant, with his pants down, kneeled behind her. Ms. NT recanted her deposition testimony at trial, claiming that she was pressured into making it by Ms. B and Ms. B’s then-current boyfriend. The prosecution presented two witnesses, a social worker and an investigator, Sergeant First Class (SFC) Underwood, to whom Ms. NT had made statements similar to her deposition testimony.
The defense position was that the alleged abuse did not occur, and that Ms. B’s promiscuity served both as a motive to he and as an explanation for her knowledge of sexual conduct. Appellant’s wife and his mother-in-law each testified that Appellant had not sexually abused Ms. B. The defense also presented witnesses who testified to Appellant’s good character, reputation, and performance in the line of duty. In closing argument, trial defense counsel stressed that there was no corroboration for Ms. B’s allegations and suggested that her promiscuity provided a motive to fabricate accusations against Appellant.
3. Instructions on findings
As the presentation of evidence drew to a close, the military judge discussed proposed instructions with the parties in a session under Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000). The Government requested that the military judge instruct the members that they could consider two lesser-included offenses, carnal knowledge under Article 120 and indecent acts with a child under Article 134. The defense objected. With respect to the Article 134 offense, the defense argued that the rape charge did not put the defense on notice that they would have to defend against the facts elicited by the Government pertinent to the specific offense of indecent acts with a child. The defense also contended that the Government had not introduced any evidence on the element under Article 134 that the alleged lesser-included offense was prejudicial to good order and discipline. The military judge rejected the defense objection.
After counsel for both parties concluded their closing arguments on findings, the military judge instructed the members as to the elements of the rape charge and the two lesser-included offenses. With respect to indecent acts with a child, the instructions included the following:
Now, the court is further advised that the offense of indecent acts or liberties with a child is also a lesser-included offense in this case. In this instance it’s a lesser-included offense of carnal knowledge.
... And in order to find the accused guilty of this lesser-included offense, that is, indecent acts with a child, you must be convinced by legal and competent evidence beyond a reasonable doubt of the following ... elements.
That at or near Glattbach, Germany, Fort Irwin, California, and Fort Knox, Kentucky, on divers occasions, on or between the 1st of September 1992 and 1st of March 1996, the accused committed certain acts upon the body of [Ms. B], by touching her private parts.
That at the time of the alleged acts ... [Ms. B] was a female under the age of 16 years.
*435 That the acts of the accused were indecent____
That [Ms. B] was a person not the spouse of the accused----
That the accused committed the acts with intent to arouse or gratify the lust or sexual desires of the accused and [Ms B].
[And] [t]hat under the circumstances the conduct of the accused was to the prejudice of good order and discipline in the armed [forces], or was of a nature to bring discredit upon the armed forces.
4. Developments during deliberations concerning the statute of limitations
After the military judge completed his instructions, the members began their deliberations on findings. While the members were deliberating, the military judge held a number of conferences with the parties under Rule for Courts-Martial 802 [hereinafter R.C.M.], and Article 39(a). During one conference pursuant to R.C.M. 802, the trial counsel notified the military judge of concerns about the statute of limitations with respect to the lesser included offenses. This led to several highly technical discussions as the military judge belatedly encountered a series of complexities resulting from the failure to address the statute of limitations prior to instructing the panel on findings.
The first Article 39(a) session that considered the statute of limitations included the following interchange between the military judge, trial counsel and civilian defense counsel:
MJ: Now, then, before we came back on the record we had an 802 conference and we talked about two issues.
The first was a concern raised by the Government, quite properly, and that is; if there is a lesser-included offense finding, that is, a finding as to an offense other than rape, there could be a statute of limitations problem.
And the issue is, obviously, that under Article 43, the statute is [tolled] as to the death penalty offense of rape, and not as to the lesser-included offense of carnal knowledge and indecent acts. And, my calculation would be the — the [tolling] point would be the 2nd of January 1995; because the charges were received by the summary court-martial convening authority on the 3rd of January 2000. So that would mark the five-year time period that the statute would bar offenses committed before the 2nd of January 1995.
I had suggested to the parties that it would be an appropriate defense to raise against that, and the timing of it would be very awkward. And, the Government, apparently would not resist that in any way, and that the proper solution would be, that if the members returned a finding of a lesser-included offense, that included a time period before 1 — Excuse me. — before the 2nd of January 1995.
But, after that date, up until the charged date of 1 March 1996, ... then the proper solution would be on a motion from the defense to exclude that portion of the finding barred by the statute of limitations. Without Government objection I would grant a motion, and order the specification thus amended.
As near as I know, I haven’t — I don’t recall seeing that in the law, but I see no reason why that would be an inappropriate process. Is that both a fair summary of what we talked about as to that matter, and would there be any objection to proceeding that way should it become necessary; Government?
TC: That is a fair summary, Your Honor, and there would be no objection.
MJ: Okay.
Defense, I will give you a full opportunity to both consider and research the question if you’d like. I don’t require you to answer immediately. But, if you have any ideas about it, I would be glad to listen. CDC: (A), we concur it’s a fair summary; and (B), the only — We are confident that it is possible and proper to do this since we are aware of case law allowing the military judge to enter findings after the panel has returned, in cases where there are inconsistent findings or otherwise, and we see it *436 as being a similar analysis. The only penny-pinching we would do is whether it’s the 2nd, or the 3rd, the 4th of January, and we’ll look into that, Your Honor.
MJ: Absolutely. Mine was the first cut on the timing. Somebody with a calendar can do a lot better, and I have not made any decision about that. We will await the event. But, at least we know what we are talking about should it occur.
While the military judge and the parties engaged in these discussions, the members continued their closed deliberations. The members subsequently interrupted their deliberations and returned to the courtroom on three separate occasions. The first interruption occurred when the military judge, in response to an inquiry from the members, provided instructions on the distinction between rape and carnal knowledge. At that time, the military judge also gave the members further instructions on the offense of indecent acts. Later, the members asked to rehear Ms. NT’s testimony about the incident she witnessed at Fort Irwin, as well as Ms. B’s testimony about the same subject. The military judge permitted the members to rehear Ms. NT’s testimony, and advised them that there was no testimony about that incident by Ms. B. Finally, the members asked if they could rehear the testimony of SFC Underwood because they believed that his testimony was “the only available evidence, other than [Ms. NTj’s deposition, [that could] illuminate the critical issue of the incident [described] by [Ms. NT] to have occurred at Fort Irwin.” At the direction of the military judge, an audio tape of the pertinent testimony was played for the members.
5. Conclusion of the panel’s deliberations and announcement of findings
The deliberations, which began in the early afternoon, were concluded in the evening. When the court-martial reconvened that evening, the military judge asked the president of the court-martial whether the members had reached a finding and whether the finding was reflected on the findings worksheets. After receiving an affirmative response, the military judge then asked the president to read the findings. The president announced that the court-martial found Appellant “Not Guilty of Rape, but Guilty of indecent acts or liberties with a child.” The findings worksheet set forth the following description of the offense:
In that Sergeant First Class David R. Thompson, United States Army, did, at or near Glattbach, Germany, Fort Irwin, California, and Fort Knox, Kentucky, on divers occasions on or between 1 September 1992 and 1 March 1996, commit indecent acts upon the body of [Ms. B], a female ... under 16 years of age, not the wife of the accused, by touching her private parts with intent to arouse the sexual desires of the accused and [Ms. B].
6. Proceedings following announcement of the findings
The military judge informed the members that because they “entered a finding of guilty to a lesser-included offense,” the court-martial would “go forward with sentencing.” He also advised the members that he would first need “to take a short recess with counsel, outside of your presence, to conduct a little bit of business.”
At the ensuing Article 39(a) session, the military judge stated that “the most significant thing is, we do now face the issue of the statute of limitations on the lesser-included offense finding.” Both parties agreed that the five-year limitations period should be based on receipt of charges by the summary court-martial convening authority on January 3, 2000, and that the statute of limitations would apply to events prior to January 3, 1995.
After hearing from both parties on the calculation of the period, the military judge said:
And so therefore the specification would have to be corrected to state: On divers occasions, on or between 3 January 1995, and 1 March 1996; is that correct, Government?
The prosecution agreed. The defense disagreed, and moved for a finding of not guilty “because we cannot determine if any of the offenses found occurred within the five-year *437 statute.” In support of its position, the defense cited United States v. Glenn, 29 M.J. 696 (A.C.M.R.1989).
The military judge observed that the matter raised by the defense was “a close issue,” that Glenn was distinguishable, and that the relevant test was “whether the record is sufficiently clear that the acts occurred within the statutory time period.” He stated that he was “satisfied that the record is sufficiently clear, that on at least one occasion, that there was in fact a touching of her private parts by the accused while at Fort Knox, that would be sufficiently clear to indicate that the offense of indecent acts with a child had occurred within the statutory time period, as the evidence in this case suggests.”
The defense disagreed. After noting that the only evidence involving Fort Knox was an allegation of sexual intercourse and that the members acquitted Appellant of rape, the defense argued that the verdict indicated that the members did not believe that there was sexual intercourse at Fort Knox. The defense comment led to the following colloquy:
MJ: You are speculating, counsel.
CDC: I think it’s fair comment, Your Hon- or. Clearly within the power of the panel, given the amount of time they took and the questions they asked, and the distinctions they drew. Further—
MJ: But we don’t know. We can’t know. Their deliberations are secret.
CDC: That is the whole point, Your Hon- or, of the argument.
The defense also noted that the majority of the members’ questions dealt with the incident described by Ms. NT, arguing that if that incident occurred, the evidence showed that it occurred outside the statutory period “in the 1993-94 time frame.” The defense urged the judge to dismiss the charge, contending “that the court is substituting its belief of the evidence, rather than that of the panel.” The military judge responded that, in his view, the legal test was whether he could find evidence to support the finding:
They have made a finding. Is there evidence which suggests all the elements of this offense could have been found within the statutory time period, is that evidence in the record? If I say, as I do, yes, I believe it is, I am not trying to justify the finding. I am simply trying to determine whether or not Glenn is a bar to allowing the conviction to stand. I understand your argument though, sir.
The military judge formally rejected the defense motion on the grounds that the record contained sufficient evidence of an offense not barred by the statute of limitations:
[F]or the purposes of resolving the defense motion, I am going to conclude that the Glenn case is not controlling, and that our record does contain sufficient evidence to support a finding, within the statutory time period; [and] that the accused did commit indecent acts upon the body of [Ms. B],
Based on that ruling, the military judge announced that he would amend the findings of the court-martial panel:
[I]n order to clarify the issue as to whether the statute of limitations applies, I am going to direct that the finding of the court be amended such that the date, “1 September 1992” would read, “3 January 1995.”
He further stated that he would give the court-martial panel an opportunity to evaluate the validity of his amendment of the panel’s verdict:
I will so direct the court-martial panel members, if they find that incompatible, they may very well say that to us — but for our purposes, that will be the nature of the offense for which sentencing evidence is being heard.
The military judge then addressed each party. First, he directed the prosecution not to refer to any events prior to January 3, 1995, during sentencing. Next, he said:
And, defense, your point is well taken and the court is willing to reconsider its ruling in light of further legal research or analysis, and it’s my belief if you prevail, the accused will not be irreparably damaged by the hearing of one sentencing witness this evening.
*438 When the members returned for the sentencing hearing, the military judge informed them that he was modifying the specification, and stated:
It’s therefore important for you to recognize that the offense for which you have convicted the accused is as follows:
[“]In that, Sergeant First Class David R. Thompson, U.S. Army, did, at or near Fort Irwin, California, and Fort Knox, Kentucky, on divers occasions between — on or between 3 January 1995 and 1 March 1996, commit indecent acts upon the body of [Ms. B], a female under 16 years of age, not the wife of the accused, by touching her private parts with intent to arouse the sexual desires of the accused and [Ms. B].[”]
If that does violence to your verdict and your views, I need you to tell me that when we reconvene, or if you know that now, I would hear that now as well.
When the military judge began to conduct the sentencing proceedings, the President of the panel interrupted him and stated that “[tjhere may be a question ... on the change.” The military judge then informed the President of the panel—
[L]et me make one thing very clear to you. In discussing this, what we must not do, is reveal the vote or opinion of any particular members. And, so, what I am really interested in is whether or not you need to say, well, as a matter of fact, based on what we were talking about in our discussions, it would appear that the changes I’ve made, would not reflect what you actually believe that you found beyond a reasonable doubt.
The President of the panel asked the military judge to allow the members to discuss the amendment to the findings. The military judge advised the members that such a discussion would be appropriate, adding that “you are talking among yourselves on providing an answer to my question. You are not reconsidering.”
After the members had discussed the matter, the President of the panel informed the military judge that if the amended specification “includes a portion of the period at Fort Irwin, ... that satisfies the board.” Appellant and his family had resided at Fort Irwin for approximately five months during that period. The military judge then recessed the court-martial for the evening after hearing a Government witness on sentencing.
When the court-martial reconvened two days later, defense counsel proposed a question for the military judge to pose to the members in response to these events: “Would knowing the approximate date or probable year of the incident about which [Ms. NT] spoke of as occurring ‘at the house with no grass’ possibly affect your finding of guilty now that the dates of the specification have been modified to encompass the time period 3 January 1995 to 1 March 1996?” The Government objected to the proposed question, and the military judge did not make any further inquiries of the members or rule on defense counsel’s proposed question at that time.
The discussion then turned again to the defense motion to dismiss the finding, and the Government contended that the defense had waived the statute of limitations. The military judge rejected the Government’s position, stating “[t]here is no waiver in this case.”
After advising the parties that he had engaged in further research, the military judge ruled against the defense motion to propound a further question to the members, and he also rejected the defense motion to dismiss the finding. The military judge offered the following explanation for altering the findings that had been returned by the members:
Here, when the period in place of the finding, was in my mind, clarified to avoid the statute of limitations bar, and I did that because, number one, I didn’t believe the accused could properly stand convicted of an offense, a portion of which was within the statute of limitations, and I didn’t believe it was appropriate to allow sentencing to go forward in consideration of an element of an offense, that was in my view barred by the statute of hmitations.
I did determine at that time, and I adhere to my earlier conclusion that the evidence in the record of trial supports the *439 conclusion that the panel made concerning the indecent act, of which [Appellant] has been convicted. I believe that [Ms. B] had testified to a period at which such an indecent acts [sic] occurred at Fort Irwin and at Fort Knox, Kentucky; that it was within the statute of limitations period.
The military judge provided the following explanation for his discussion with the members regarding modification of the findings:
I believe I acted properly to confirm that with the court members, in accordance with R.C.M. 922 [announcement of findings]; that is to say to, in effect, discuss an ambiguous finding with the court members. Once they recognized that I had modified the findings, they clearly said, hey, we think there is some concern about this, let us think about it. They were given an opportunity to think about it. They came back and were clearly not yet satisfied. I went further and made sure they understood that the modification left in a portion of the time period at Fort Irwin, and at that point the panel said very clearly, okay. In this case we understand it. That’s all right. That is consistent with what we found. I believe, at that point, the ambiguity was — the ambiguity in the finding was cleared up and that that did not amount to a polling of the court members.
I did not have any member testify under M.R.E. 606 [competency of court member as witness], and I don’t believe the verdict was impeached under R.C.M. 923 [impeachment of findings] in any way by the clarification of that ambiguity, an ambiguity admittedly interjected into the trial by trial judge.
II. DISCUSSION
When the evidence reasonably raises issues concerning a lesser-included offense or the statute of limitations, the military judge is charged with specific affirmative responsibilities. If the evidence at trial reasonably raises a lesser-included offense, the military judge has an affirmative duty to include in the instructions a “description of the elements of each lesser included offense in issue, unless trial of a lesser included offense is barred by the statute of limitations (Article 43) and the accused refuses to waive the bar.” R.C.M. 920(e)(2). See also R.C.M. 907(b)(2)(B) discussion; United States v. Davis, 53 M.J. 202, 205 (C.A.A.F.2000). The military judge has an affirmative obligation to advise an accused of the right to assert the statute of limitations, and must determine that any waiver of the statute of limitations bar is both knowing and voluntary. R.C.M. 907(b)(2)(B); United States v. Moore, 32 M.J. 170, 173 (C.M.A.1991); United States v. Salter, 20 M.J. 116, 117 (C.M.A.1985).
In the present case, the military judge appropriately noted that evidence at trial reasonably raised two lesser-included offenses, carnal knowledge and indecent acts. He also provided appropriate instructions as to the elements of each offense.
Before giving those instructions, however, the military judge was required to draw the attention of the Appellant to the fact that a substantial portion of the time period set forth in the proposed instructions included dates in which prosecution of the lesser-included offenses was barred by the statute of limitations. In the present case, the military judge erred by failing to engage in these discussions with Appellant prior to instructing the members.
The military judge had a timely opportunity to correct this error after the court was closed for deliberations. At that point, when the problem was called to his attention by the trial counsel, the military judge could have conducted the required inquiry of Appellant to ensure that Appellant understood the import of the statute of limitations in this case. If the military judge had made such an inquiry, and if Appellant had responded in a manner demonstrating a knowing and voluntary waiver, no further instructions would have been required. If, on the other hand, the military judge had determined that Appellant would not waive the statute of limitations, the military judge would have been obligated to modify the instructions as to the lesser included offenses to include only the period that was not time-barred. See R.C.M. 920(b).
*440 It is possible that Appellant, had he been advised properly by the military judge, might have decided to waive the statute of limitations for tactical reasons. The military judge, however, did not ascertain whether Appellant wished to do so. Instead, the military judge engaged in a highly technical discussion with counsel for the parties as to the legal implications of the statute of limitations — a discussion that was devoid of any attention to the subject of waiver. In that regard, it is noteworthy that when the trial counsel subsequently asserted that defense counsel’s actions amounted to waiver, the military judge expressly rejected the suggestion that Appellant had waived the statute of limitations.
When the panel announced its findings in open court, those findings were final and were not subject to reconsideration by the members. See R.C.M. 922(a), 924(a); United States v. Walters, 58 M.J. 391, 396 n. 5 (C.A.A.F.2003); see also R.C.M. 922(e) (prohibition on polling of members). To the extent that a military judge may clarify an ambiguous finding, see R.C.M. 922(b) discussion, any such authority is not applicable in the present case. The military judge had instructed the members that they could return a verdict of guilty to the lesser-included offense of indecent acts with a child. He also had instructed them that they could find Appellant guilty if they determined that these acts occurred at any time between September 1,1992, and March 1,1996. They returned a verdict in which their findings mirrored the military judge’s instruction both as to the lesser-included offense of indecent acts and the full period of time from September 1, 1992, to March 1, 1996. There was no ambiguity. The findings were clear.
The problem was not that the military judge permitted an ambiguous verdict. The problem was that, absent waiver, the military judge was required to provide the members with instructions that focused their deliberations on a much narrower period of time— January 3, 1995, to March 1, 1996 — the period not barred by the statute of limitations. The time to focus the members’ attention on the correct time period was before they concluded their deliberations — not after they concluded their deliberations and returned a finding that addressed a much longer span of time. The failure to do so was not relieved by the military judge’s subsequent reference to evidence in the record that could support the finding. The issue here is not legal sufficiency of the evidence. See United States v. Turner, 25 M.J. 324, 324-25 (C.M.A.1987)(eiting the legal sufficiency test from Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). It is the failure of the military judge to focus the panel’s deliberations on the narrower time period permitted by the statute of limitations.
In summary, the military judge’s instructions, although erroneous, were not ambiguous. The panel’s findings, which reflected those instructions, likewise were not ambiguous. In those circumstances, the military judge was not authorized to modify the findings, irrespective of any subsequent discussions with the members. The failure to conduct a statute of limitations waiver inquiry with Appellant, the erroneous inclusion of the time-barred period in the instructions to the members, and the post-announcement modification of the findings constituted a series of errors materially prejudicial to the substantial rights of Appellant. See Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).
III. DECISION
The decision of the United States Army Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

. We granted review of three issues:
I. WHETHER THE MILITARY JUDGE ERRED AS A MATTER OF LAW WHEN HE *433 REFUSED TO DISMISS THE CHARGE AND ITS SPECIFICATIONS AS BEING OUTSIDE THE STATUTE OF LIMITATIONS.
II. WHETHER THE MILITARY JUDGE ERRED AS A MATTER OF LAW WHEN HE REFUSED TO POLL THE MEMBERS AS TO WHETHER IT WOULD BE HELPFUL FOR THEM TO KNOW THE APPROXIMATE DATE THAT THE ALLEGED INDECENT ACT OCCURRED.
III. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE REFUSED TO STRIKE THE PRESIDENT OF THE PANEL AFTER IT WAS REVEALED THAT THE PRESIDENT WAS PASSING NOTES TO A JUNIOR MEMBER THAT DEMONSTRATED THE PRESIDENT’S INHERENT BIAS AGAINST APPELLANT.

. The subsequent amendment of Article 43(b) in the National Defense Authorization Act for Fiscal Year 2004, Pub.L. No. 108-136, § 551, 117 Stat. 1392 (2003) (extending the statute of limitations for certain child abuse offenses) is not at issue in the present appeal. Cf. Stogner v. California, 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003).