# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

────────────────

## No. ACM 40142 (f rev)

────────────────

### UNITED STATES
*Appellee*

v.

### Cody R. SAYERS
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

────────────────

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 27 March 2023

────────────────

*Military Judge:* Shad R. Kidd.

*Sentence:* Sentence adjudged on 4 May 2021 by GCM convened at Offutt Air Force Base, Nebraska. Sentence entered by military judge on 2 June 2021 and reentered on 14 October 2022: Dishonorable discharge, confinement for 3 years, reduction to E-1, and a reprimand.

*For Appellant:* Captain Thomas R. Govan, Jr., USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Cortland T. Bobczynski, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RAMÍREZ, and ANNEXSTAD, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Chief Judge JOHNSON and Judge ANNEXSTAD joined.

────────────────

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

────────────────

RAMÍREZ, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement, of one specification of fraudulent enlistment, in violation of Article 83, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 883, and two specifications of sexual abuse of a child, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b.[1]

The pretrial agreement provided that the approved sentence would not exceed 54 months of confinement. Additionally, the pretrial agreement contemplated that Specifications 1 and 2 of Charge II[2] would be withdrawn and dismissed with prejudice upon action by the convening authority. Further, the pretrial agreement provided that any forfeitures would be deferred or waived to maximize the financial benefit to Appellant's dependents. Finally, the pretrial agreement included a provision that the convening authority would not prefer any additional charges for "any potential misconduct of which the Office of the Staff Judge Advocate or any military law enforcement agency . . . is aware at the time this offer is signed by the Convening Authority."

After accepting Appellant's pleas of guilty, the military judge sentenced Appellant to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand.

Appellant originally raised three issues on appeal: (1) whether the military judge committed plain error by failing to advise Appellant of his right to assert the statute of limitations defense to the charge and specification of fraudulent enlistment; (2) whether trial defense counsel rendered ineffective assistance by failing to investigate and present readily available mitigation evidence of Appellant's good character during presentencing; and (3) whether Appellant was illegally confined with foreign nationals, in violation of Article 12, UCMJ, 10 U.S.C. § 812.[3]

On 27 September 2022, we remanded the record of trial to the Chief Trial Judge, Air Force Trial Judiciary, for correction under Rule for Courts-Martial (R.C.M.) 1112(d) to resolve a substantial issue with the post-trial processing,

---

[1] All references in this opinion to the punitive article of fraudulent enlistment refer to Article 83, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 883, *Manual for Courts-Martial, United States* (2005 ed.). References to the other punitive articles are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise noted, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Both specifications alleged sexual assault of a child.

[3] Appellant personally raised the third issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

insofar as the convening authority's intent was not clear and any action by the convening authority on the adjudged forfeitures was not reflected in the entry of judgment or the convening authority's decision on action memorandum. *United States v. Sayers*, No. ACM 40142, 2022 CCA LEXIS 565, at *5–6 (A.F. Ct. Crim. App. 27 Sep. 2022) (unpub. op.).

On remand, a corrected entry of judgment was prepared. The corrected entry of judgment states that the forfeiture of all pay and allowances was disapproved, no action was taken on the findings, and the convening authority effectuated the agreements required by the pretrial agreement. However, the corrected entry of judgment is inaccurate in that it indicates the convening authority disapproved the adjudged forfeiture of all pay and allowances, whereas the convening authority's decision on action, which was not reaccomplished post remand, expressly states the convening authority "approve[d] the sentence in its entirety." However, we find a further remand is unnecessary because, as explained below, we affirm a reassessed sentence that does not include any adjudged forfeiture of pay or allowances.

After Appellant's case was re-docketed with this court, Appellant did not raise any new assignments of error but preserved the three he originally raised. We now turn to those three issues. We find error concerning the first raised issue. We set aside the findings of guilty as to Charge I and its Specification (fraudulent enlistment), affirm the remaining findings, and reassess the sentence.

## I. BACKGROUND[4]

In 2001, prior to enlisting in the Air Force, Appellant was charged with, and convicted of, First Degree Sexual Assault of a Minor, a Class 2 Felony in the State of Nebraska, for sexually assaulting a family member. He served a probationary sentence for the offense. In 2005, shortly after finishing his probationary sentence, Appellant enlisted in the Air Force, and deliberately concealed the conviction. Specifically, on 16 July 2004, in the process of enlisting, Appellant was required to fill out a Standard Form 86, *Questionnaire for National Security Positions*. He marked "no" when asked if he had ever been charged with, or convicted of, a felony. His conviction was for a type of offense that would have disqualified Appellant from service in the Air Force, absent a waiver. His enlistment paperwork was approved; he joined the Air Force with an official enlistment date of 19 July 2005, and he served more than one enlistment.

---

[4] Appellant entered into a stipulation of fact. Except as otherwise noted, facts in this section come from that document.

While in his mid-20s, Appellant was stationed at Offutt Air Force Base (AFB), Nebraska. He lived in on-base housing with a couple he knew. During this time, he met EA, the victim in this case. EA was the younger sister of one of the household members and would occasionally visit her. EA was between 10 and 12 years old when she met Appellant.

Appellant deployed between December 2014 and June 2015. While on deployment, Appellant was in contact with EA through text messages, Skype, and Snapchat. Appellant told EA that he loved her, commented on EA's breasts, told her that she had a "fit" body, and sent her a photo of himself blowing a kiss to her.

Upon return from his deployment, Appellant once again moved in with the same couple. However, this time they were living off-base and Appellant rented a room in their house. As she had in the on-base home, EA visited her sister while Appellant was there. Appellant knew that EA was younger than 16 years old.

On multiple occasions in 2015, Appellant touched EA's vagina, through her clothing, with his hand, with the intent to gratify his sexual desires. On one occasion, Appellant and EA were alone in the home. Appellant took EA to his bedroom, began to kiss her, and touched her vagina and breasts over her clothing with his hand, with the intent to gratify his sexual desire. On another occasion, Appellant took EA to a secluded location at a lake, 57 miles from where he lived. While at the lake, Appellant kissed EA and touched her vagina and breasts over the clothing, with the intent to gratify his sexual desire. EA was 14 years old during both of these incidents.

During the investigation into Appellant's actions with EA, the Air Force Office of Special Investigations (AFOSI) conducted a law enforcement record check on Appellant and found the prior felony conviction for sexual assault of a child, which he had failed to disclose. This led to the charge of fraudulent enlistment.

## II. DISCUSSION

### A. Statute of Limitations for Fraudulent Enlistment

Appellant claims that the military judge committed plain error because he failed to instruct Appellant on the applicable statute of limitations and failed to inform him of the right to assert the statute of limitations as a defense to the fraudulent enlistment charge and specification. Appellant requests that the charge and specification be dismissed, that we reassess the sentence, and that we reduce his confinement to 24 months.

The Government argues that Appellant agreed to waive all motions which may be waived under the Rules for Courts-Martial and that the agreement

reflected that Appellant's trial defense counsel fully advised him of the nature of the charges against him, the possibility of his defending against them, any defense which might apply, and the effect of the guilty plea which he was offering to make. Therefore, according to the Government, Appellant waived any issue associated with the statute of limitations.

### 1. Additional Background

Appellant's pretrial agreement contained a provision in which he agreed to "[w]aive all motions which may be waived under the Rules for Courts-Martial." The military judge went over this provision with Appellant during his court-martial and explained that any issue Appellant waived at trial, he would also be "waiving . . . for appellate review." Appellant said that he understood.

Appellant was represented by two trial defense counsel—a detailed military defense counsel and private civilian defense counsel. The military judge asked trial defense counsel what motions were contemplated. Neither trial defense counsel mentioned the statute of limitations as a motion that would have been filed.

Appellant then agreed with the military judge that he was "entering into this agreement because [he] believe[d] it [was] in [his] best interest to do so given [ ] the totality of the agreement." The military judge concluded this portion of the colloquy by asking Appellant: "Were you fully advised of the consequences of the offer" to plead guilty "and the waivers that we have already talked about when you submitted this offer?" Appellant answered, "Yes, Your Honor."

The trial transcript is silent as to the statute of limitations. Similarly, the stipulation of fact and pretrial agreement do not discuss the statute of limitations issue.

### 2. Law

Unless otherwise provided by caselaw, statute, or specific rule, there is a "presumption" that the "statute of limitations in effect at the time of the offense controls." *United States v. McPherson*, 81 M.J. 372, 377 (C.A.A.F. 2021).

In 2005, at the time of the fraudulent enlistment offense, Article 43(b)(1), UCMJ, stated in relevant part that

> a person charged with an offense is not liable to be tried by court-martial if the offense was committed more than five years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command.

10 U.S.C. § 843(b)(1) (*Manual for Courts-Martial, United States* (2005 ed.) (2005 *MCM*)).

"Deciding whether a statute of limitations has expired is a question of law that we review de novo." *United States v. Adams*, 81 M.J. 475, 479 (C.A.A.F. 2021) (citation omitted). "When the statute of limitations issue is not raised at trial, we also review for plain error." *Id.* (citation omitted). "To establish plain error, [an] appellant must demonstrate (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *Id.* (internal quotation marks and citation omitted).

The Discussion to R.C.M. 907 that existed in 2005[5] stated:

> Some offenses are continuing offenses and any period of the offense occurring within the statute of limitations is not barred. Absence without leave, desertion, and fraudulent enlistment are not continuing offenses and are committed, respectively, on the day the person goes absent, deserts, or first receives pay or allowances under the enlistment.[6]

The United States Court of Appeals for the Armed Forces (CAAF) has explained that "[t]he provisions of a discussion section to the R.C.M. are not binding but instead serve as guidance." *United States v. Chandler*, 80 M.J. 425, 429 n.2 (C.A.A.F. 2021) (citation omitted). Additionally, "a failure to comply with a matter set forth in a 'Discussion' does not, of itself, constitute error, although the 'Discussion' under a rule may refer to or be based on other sources of authority that are binding." *United States v. Fisher*, 37 M.J. 812, 818 (N.M.C.M.R. 1993) (citation omitted). Further, our superior court, in some cases, "has cited with approval" the "non-binding Discussion accompanying the Rule[s for Courts-Martial]." *United States v. Buller*, 46 M.J. 467, 468 (C.A.A.F. 1997) (first citing *United States v. Chatman*, 46 M.J. 321, 323 (C.A.A.F. 1997); and then citing *United States v. Leal*, 44 M.J. 235, 236 (C.A.A.F. 1996)).

Additionally, in 2005, R.C.M. 907(b)(2)(B) provided that the statute of limitations could be waived by an accused. However, it also stated: "[I]f it appears that the accused is unaware of the right to assert the statute of limitations in

---

[5] We note that the current version of the Discussion to the R.C.M. contains the same language.

[6] Article 43(h)(1), UCMJ, 10 U.S.C. § 843(h)(1), now provides that an enlisted member charged with fraudulent enlistment may be tried by court-martial if the summary court-martial convening authority receives the charges and specifications "during the period of enlistment or five years, whichever provides a longer period." However, this change does not apply retroactively to Appellant's enlistment because the prior five-year limitation period had already expired when the change to Article 43, UCMJ, was enacted in 2016. *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5225(f), 130 Stat. 2000, 2909 (23 Dec. 2016).

bar of trial, the military judge shall inform the accused of this right." R.C.M. 907(b)(2)(B) (2005 *MCM*).

"When the evidence reasonably raises issues concerning . . . the statute of limitations, the military judge is charged with specific affirmative responsibilities." *United States v. Thompson*, 59 M.J. 432, 439 (C.A.A.F. 2004). "The military judge has an affirmative obligation to advise an accused of the right to assert the statute of limitations, and must determine that any waiver of the statute of limitations bar is both knowing and voluntary." *Id.* (citations omitted). An appellate court will "not impose upon an accused a waiver of the right to plead the statute of limitations in bar of trial when the record does not disclose that he was aware of that right." *United States v. Salter*, 20 M.J. 116, 117 (C.M.A. 1985).

### 3. Analysis

We find the military judge committed plain error and this error resulted in material prejudice. The military judge did not discuss with Appellant whether Appellant was aware of the right to assert the statute of limitations defense to fraudulent enlistment. Although *Thompson* was not a guilty plea case and as such there was no provision to waive all waivable motions, we find it instructive. As the CAAF explained in *Thompson*: "It is possible that [the a]ppellant, had he been advised properly by the military judge, might have decided to waive the statute of limitations for tactical reasons. The military judge, however, did not ascertain whether [the a]ppellant wished to do so." *Thompson*, 59 M.J. at 440. When the military judge here questioned trial defense counsel as to what motions were contemplated, the statute of limitations issue never came up. We similarly find that it is possible that Appellant, had he been advised properly by the military judge, might have decided to waive the statute of limitations for the reasons now cited by the Government in its answer to Appellant's assignments of error brief—Appellant "received the benefit of the dismissal with prejudice of more serious charges by pleading guilty to fraudulent enlistment." Also like in *Thompson,* the military judge here did not ascertain whether Appellant wished to do so. The CAAF in *Thompson* ultimately held that that military judge's failure to conduct a statute of limitations waiver inquiry with the accused was error, and coupled with other errors, constituted a series of errors materially prejudicial to the substantial rights of the accused. *Id.* at 440. We see no reason to rule otherwise in Appellant's case.

While the Government argues that "Appellant's bargained-for benefit makes clear that the reason he [pleaded] guilty to the fraudulent enlistment and agreed to 'waive all waivable motions' was to dodge two very serious convictions" and that the "decision was intentional and strategic," it fails to cite anything in the record of trial that supports this claim. To the contrary, the record suggests trial defense counsel did not contemplate such a motion. As

noted above, the version of R.C.M. 907 in effect at the time of Appellant's enlistment provided that the statute of limitations could be waived. When the military judge asked trial defense counsel about pretrial motions which were being waived, the Defense made no mention of the statute of limitations. Thus, the military judge could not conclude Appellant was aware of this issue. As a result, the military judge was obligated by R.C.M. 907 to inform Appellant of his right to assert the statute of limitations defense. Because this did not happen, the military judge committed plain error.

Significantly the "statute of limitations" is the only waivable ground under the Rules for Courts-Martial that requires the military judge to specifically inform the accused of his rights when it appears that the accused is unaware of those rights. *See* R.C.M. 907(b)(2)(B). We are not at liberty to simply disregard requirements in the Rules for Courts-Martial that protect an accused's right to make fully informed decisions regarding his defense.

We ultimately find that this error resulted in material prejudice, given that the clear language of the law indicates that a motion related to this issue would have led to dismissal of the specification.[7] Therefore, we find the military judge committed plain error and we set aside the findings of guilty as to Charge I and its Specification (fraudulent enlistment). We reassess the sentence later in this opinion.

**B. Ineffective Assistance of Counsel**

Appellant argues that trial defense counsel rendered ineffective assistance of counsel by failing to investigate and present mitigation evidence. He claims he was prejudiced because the military judge "heard only a sliver of the positive character evidence that was available about [Appellant]." To support his claim, Appellant moved to attach a declaration from himself and a declaration from his wife, both describing the character evidence Appellant could have presented; we granted Appellant's motion. In response to an order from this court, the Government moved to attach responsive declarations from both trial defense counsel. We find it appropriate to consider the submitted declarations to resolve the claimed ineffective assistance of counsel.[8]

---

[7] Additionally, a motion could have led to Appellant or the Government withdrawing from the plea agreement, and both parties losing the benefit of that bargain.

[8] We considered Appellant's declaration, his wife's declaration, and the declarations of both trial defense counsel to resolve the claim of ineffective assistance of counsel. *See United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020) (noting Courts of Criminal Appeals may consider affidavits "when necessary for resolving claims of ineffective assistance of trial defense counsel").

**1. Additional Background**

During presentencing proceedings, trial defense counsel introduced the testimony of Appellant's wife and the wife's ex-husband (and father of Appellant's three stepchildren). In addition, Appellant made oral and written unsworn statements to the military judge; the written statement had several pages of family photographs attached.

In his declaration, Appellant states that prior to his court-martial, he "had discussions" with his civilian trial defense counsel, Mr. MK, and military trial defense counsel "about what evidence the Defense would be presenting at sentencing." Appellant further states that he wanted to concentrate on his past and that Mr. MK wanted to concentrate on Appellant's "positive impact" since the charged offenses. Appellant then claims that Mr. MK asked him to provide contact information for individuals who could testify at the presentencing phase of his court-martial. Appellant states that he complied. Appellant does not recall Mr. MK asking him to obtain character letters for trial. According to Appellant's declaration, he and his wife met with Mr. MK the Friday before the court-martial. His declaration continues that prior to the meeting, Mr. MK did not tell Appellant "specifically who they were planning to call as witnesses or what evidence they were planning to admit at presentencing." Nonetheless, Appellant claims that Mr. MK told him that "of the people he spoke with, all the potential witnesses were willing and available to testify at [Appellant's] trial," except for one. According to Appellant, Mr. MK told him that he "wanted to keep the number of witnesses at trial small." Appellant then states that the only documentary evidence introduced by the Defense in presentencing was his written unsworn statement, that had photographs attached. He then alleges that he "[did] not believe that they had any other documentary evidence available to present or had prepared to present any other evidence." Appellant claims that had his attorneys asked him to obtain character letters for presentencing, he would have done so—which he ultimately did for clemency, at their suggestion—but instead of doing this for presentencing, he "simply relied on what [his] attorneys told [him] to do at the time."

Mr. MK provided a declaration related to Appellant's claims of ineffective assistance of counsel. In the declaration, Mr. MK acknowledges that Appellant wanted to present evidence during presentencing of Appellant growing up in a broken home and being separated from his family. Mr. MK states that he and Appellant discussed "at great length" the likelihood that bringing up the poor upbringing, and separation from family, would "very likely open the door to rebuttal evidence related to [Appellant's conviction for sexually abusing a minor family member] which would be otherwise inadmissible." Mr. MK then explains that he and Appellant "discussed the perception and realistic impact that 'pointing the finger' would have on [Appellant's] acceptance of responsibility." They also "discussed the fact that if he wanted to argue to the [military]

judge that he was accepting responsibility, he must *actually* accept responsibility." Additionally, Mr. MK notes that they "specifically discussed the fact that saying words and acting in a manner that supports those words are two different things." Mr. MK then states that he provided alternatives to Appellant, but ultimately "allowed [Appellant] to make the decision unilaterally after multiple conversations that took place on separate days." Mr. MK concludes this portion of the declaration by stating that Appellant "fully understood the possible strategies that were presented to him and knowingly, intelligently, and voluntarily directed [Mr. MK] to proceed in the manner recommended."

As to the potential witnesses for mitigation purposes, Mr. MK agrees with Appellant that Mr. MK asked Appellant for a list of potential witnesses. However, according to Mr. MK's declaration, "[e]very witness [Mr. MK] spoke to indicated they had an unfavorable opinion of [Appellant]." Because of this, Mr. MK explains, "Our response . . . was simply to revert to our strategy of focusing on how [Appellant] ha[d] changed since the allegations." Appellant "agreed with [Mr. MK's] recommendations to focus on him as a man, husband, and father *since* the time of the incidents."

As to the character letters, Mr. MK also agrees with Appellant that he did not ask for any character letters from Appellant. However, Mr. MK explains that based on his "personal conversations with witnesses [Appellant had] already provided" him, Mr. MK "intentionally did not ask for character letters from those witnesses."

Appellant's military trial defense counsel, Captain (Capt) AB, also provided a declaration. In his declaration, Capt AB explains that he "had extensive conversations about the allegations" with Appellant "and the role that his previous conviction for sexually abusing a minor family member could potentially have at his court-martial." According to Capt AB, Appellant "was highly concerned about information related to his case, whether that be his ongoing court-martial or juvenile offense, being shared with other people." Capt AB notes that '[o]n multiple occasions it had to be explained to [Appellant] that any character witness for either the [P]rosecution or the [D]efense would likely be asked about their knowledge of the offenses to which [Appellant] was pleading guilty so as to test the basis of their character opinion." Based on Capt AB's conversations with Appellant, including Appellant's "reaction when he was informed that potential witnesses would be informed about the general details of the crimes that he was pleading guilty to, it appeared clear that [Appellant] had not shared the nature of his crimes with prospective character and sentencing witnesses." According to Capt AB, Appellant "had the same concern about details being shared with his wife . . . who was a potential sentencing witness." Capt AB explains that ultimately, "the strategic determination was made to instead focus the [D]efense on creating a narrative of how [Appellant] had changed since the incident in question." Additionally, Capt AB states that due

to "the large amount of impactful rebuttal evidence that the [P]rosecution ha[d] at its disposal, to include highly inflammatory evidence related to [Appellant's] persistent sexual abuse of a minor, the strategic and deliberate decision was made *not* to request that the rules of evidence be relaxed at trial." Capt AB's declaration also addresses the numerous character statements provided during clemency. Capt AB notes that because of his "assessment that the clemency letters could not negatively impact [Appellant] in the same way that relaxing the rules of evidence could at trial, [he] ultimately made the decision to include them in [Appellant]'s request for relief following his sentencing."

**2. Law**

We review claims of ineffective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citation omitted). Appellate courts give great deference to trial defense counsel's judgments and presume "counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Morgan*, 37 M.J. 407, 409 (C.M.A. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Ineffective assistance of counsel claims are analyzed under the test set out by the United States Supreme Court in *Strickland*, where we and consider "(1) whether counsel's performance fell below an objective standard of reasonableness, and (2) if so, whether, but for the deficiency, the result would have been different." *United States v. Gutierrez*, 66 M.J. 329, 331 (C.A.A.F. 2008) (citations omitted). An appellant has the burden to demonstrate "both deficient performance and prejudice." *Id.* (citation omitted). Additionally, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (alteration and omission in original) (quoting *Strickland*, 466 U.S. at 697).

In conducting an analysis of an ineffective assistance of counsel claim, courts begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). "[T]he burden rests on the accused to demonstrate a constitutional violation." *Id.* An accused overcomes the presumption of competence only when he shows there were "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.[9]" *Strickland*, 466 U.S. at 687. This court does "not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine[s] 'whether counsel made an objectively reasonable choice in strategy' from the available alternatives." *Akbar*, 74 M.J. at 379 (quoting *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)). For this reason, defense counsel receive wide latitude in making tactical decisions. *Cullen v.*

---

[9] U.S. CONST. amend. VI.

*Pinholster*, 563 U.S. 170, 195 (2011) (citing *Strickland*, 466 U.S. at 689). An appellate court asks "whether the decision to forgo putting on [specific] evidence . . . had a reasonable, tactical basis." *United States v. McConnell*, 55 M.J. 479, 485 (C.A.A.F. 2001). "While [an] appellant may [ ] disagree with the decision in retrospect," such disagreement does not necessarily mean the decision fell "below *Strickland*'s objective standard of reasonableness." *Id*. This also applies to trial defense counsel's strategic decisions. *Morgan*, 37 M.J. at 410. Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted).

In making this determination, courts must be "highly deferential" to trial defense counsel and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. This specifically applies to sentencing. "When there is an allegation that counsel was ineffective in the sentencing phase of the court-martial, we look to see whether there is a reasonable probability that, but for counsel's error, there would have been a different result." *Captain*, 75 M.J. at 103 (internal quotation marks and citation omitted). Additionally, when the allegation concerns not calling specific defense sentencing witnesses, "for a finding of prejudice, the testimony of the prospective witnesses would have had to reduce the sentence awarded by the military judge to something less than" what an appellant received. *Id*.

In determining whether to grant a post-trial hearing to resolve a factual matter pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967), we are guided by the standard enunciated in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). Courts of Criminal Appeals do not "decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Ginn*, 47 M.J. at 243. Instead, we employ various principles for determining whether a *DuBay* hearing is appropriate for a claimed ineffective assistance of counsel. One of these principles is that if we would not grant relief even if we were to resolve all factual disputes in an appellant's favor, we may reject the claim without the need of a post-trial hearing. *United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F. 2002) (citing *Ginn*, 47 M.J. 236).

### 3. Analysis

Trial defense counsel and Appellant agree that Appellant provided trial defense counsel names and contact information for potential sentencing witnesses and character statements. Counsel and Appellant agree that those individuals were not called during presentencing and did not provide character letters. The point of disagreement appears to be the rationale for doing so. Nonetheless, we find that a hearing is unnecessary. As discussed below, we

find that even if we were to accept Appellant's factual assertions as true, we would not grant him relief. *See Sales*, 56 M.J. at 258.

First, the military judge instructed Appellant that he had the right to counsel, the right to plead guilty or not guilty, the right to testify or not, and the right to have his case heard by a panel or a military judge alone. However, Appellant points to no right to be able to decide how sentencing decisions are made, including the choice of which witnesses to call and what presentencing documentary evidence to enter into evidence. Whether we believe Appellant that it was trial defense counsel's decision alone, or whether Appellant agreed with the tactical sentencing decision, makes no difference on appeal. As we explained above, we look to whether the decision to forgo putting on specific evidence had a reasonable, tactical basis and note that while Appellant now disagrees with the decision it does not mean that the decision equates to ineffective assistance of counsel. *See McConnell*, 55 M.J. at 485. Appellant does not dispute that there was a disagreement with strategy or tactical decisions. Instead, he relies on the distorting effects of hindsight as to the value of a different strategy. The law instructs otherwise. As Capt AB's declaration explains, trial defense counsel had a clear reason for the decision, which was to preclude aggravating evidence from being admitted during the presentencing phase. Counsel spoke to witnesses, explored the possibility of sentencing evidence, and made a reasonable tactical decision to not open the door to the potential details of Appellant's prior misconduct. We do not second guess reasonable tactical decisions. We grant no relief on this basis.

## C. Alleged Violation of Article 12, UCMJ

### 1. Additional Background

Appellant personally raises the issue of whether he was illegally confined with foreign nationals. In support of this assignment of error, Appellant filed a declaration, which is separate from his declaration relating to alleged ineffective assistance of counsel. In this declaration, Appellant claims that after his court-martial, he was taken to the confinement facility at Offutt AFB. Then, one day later, he was transferred to the Cass County Jail in Plattsmouth, Nebraska, where he spent approximately 45 days in confinement awaiting transfer to the Naval Consolidated Brig Charleston. Appellant's declaration claims that for approximately 35 days of his confinement at the Cass County Jail, he was confined "in the trustee dorm with . . . at least one, possibly two," foreign national inmates. He provides this information, without proof, but instead relies on hearsay and conjecture. He also supports his claim based on the allegation that one of the inmates was "of Honduran or Guatemalan decent [sic]" and "spoke very little English"—again, without any evidence of the nationality of the inmate.

In this raised issue, Appellant "avers that because the offenses for which he was charged all occurred prior to 1 January 2019, and because he was not sentenced under the new sentencing rules, that the version of Article 12, UCMJ[,] in effect prior to 1 January 2019 should apply to his case."

The Government argues that we are precluded from considering Appellant's post-trial confinement claim because his post-trial confinement matters were not included in the record. The Government also argues that Appellant failed to seek any administrative relief prior to invoking judicial intervention. We find that we do not need to address these matters to resolve the issue.

### 2. Law

An appellant "must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 471 (C.A.A.F. 2007) (internal quotation marks and citation omitted). This includes claims made pursuant to Article 12, UCMJ. *See id.* at 473–74. "We review factual findings under a clearly erroneous standard, but the ultimate determination of whether an [a]ppellant exhausted administrative remedies is reviewed de novo, as a mixed question of law and fact." *Id.* at 471 (internal quotation marks and citation omitted).

At the time that Appellant was in custody in 2021, Article 12, UCMJ, 10 U.S.C. § 812, provided that military members may not be "placed in confinement in immediate association with" either (1) "enemy prisoners," or (2) others "who are detained under the law of war and are foreign nationals" and "who are not members of the armed forces."

### 3. Analysis

The original Article 12, UCMJ, is a relic of World War II. *See Wise*, 64 M.J. at 475. The "sole goal" of the law at the time, according to congressional testimony regarding the article, was to ensure "that American boys were not confined with prisoners of war or other enemy nationals," which "often happened during the war." *Id.* (citations and brackets omitted.) The law was created so that "American servicemen could not be confined with enemy prisoners or any other foreign nationals outside of the continental limits of the United States." *Id.* (citations omitted and emphasis removed.)

The law has changed. Appellant acknowledges that the law, since 1 January 2019, is contrary to his position, and that his confinement was in 2021. We do not get to the issue of whether Appellant sought administrative relief as to this issue. Appellant provides no law, and we have found none, for the proposition that we apply the version of Article 12, UCMJ, in effect when he committed his offenses. We do not grant Appellant any relief.

**D. Sentence Reassessment**

Because the conviction for fraudulent enlistment has been set aside but the other convictions remain, we must determine whether we can reassess the sentence or whether we must order a rehearing. We have "broad discretion" in either deciding to reassess the sentence and in arriving at the reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). This is because the CAAF has explained that we have the ability to modify sentences expeditiously, intelligently, and fairly. *Id.* at 15.

Whether a sentence may be reliably reassessed is "based on the totality of the circumstances presented." *Id.* The CAAF has identified four non-exclusive factors to assist in this analysis. As applied to Appellant's case, those factors are: (1) the lack of dramatic changes in the penalty landscape; (2) that Appellant chose sentencing by military judge alone instead of sentencing by members; (3) that the "nature of the remaining offenses capture the gravamen of criminal conduct;" and (4) that the remaining offenses are the type that we have the experience and familiarity with to reliably determine what sentence would have been imposed at trial. *See id.* at 15–16.

Based on the totality of circumstances, and relying on the four illustrative *Winckelmann* factors, we find we can reliably reassess the sentence.

We begin with an assessment of the changes in the penalty landscape. Based on his pleas alone, Appellant faced a maximum punishment of a reprimand, a fine, reduction to the grade of E-1, forfeiture of all pay and allowances, 42 years of confinement, and a dishonorable discharge. However, the pretrial agreement set the maximum confinement at 54 months. Based on our findings, Appellant no longer has a conviction for fraudulently enlisting in the Air Force. However, we find that this does not constitute a dramatic change in the penalty landscape, given that the maximum confinement for fraudulent enlistment was only two years.

Next, we note that Appellant was sentenced by a military judge. In *Winckelmann*, the CAAF explained that: "[a]s a matter of logic, judges of the [C]ourts of [C]riminal [A]ppeals are more likely to be certain of what a military judge would have done as opposed to members." *Id.* at 16.

We find that the nature of the remaining offenses captures the gravamen of the criminal conduct. Appellant still stands convicted of sexually abusing a child on multiple occasions. Appellant met the child when she was 10 years old and he committed these offenses against her when she was only 14 years old. It was the sexual abuse of a child that started the investigation, not the fraudulent enlistment. The sexual abuse of a child specifications represent the gravamen of Appellant's criminal conduct.

Finally, we have the experience and familiarity with the offenses to reliably determine what sentence would have been imposed at trial.

In our analysis, we consider that Appellant took advantage of the friendship of those who opened their home to him and abused a child on multiple occasions over a period of time. Even without the dismissed specification, the remaining specifications, alone, by nature of Appellant's pleas, but without the benefit of a pretrial agreement, could have led to Appellant being sentenced to a dishonorable discharge, confinement for 40 years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. In addition, trial counsel did not cite the fraudulent enlistment specification when arguing for a specific sentence. Although trial counsel did mention the underlying previous conviction once, it was only in relation to rehabilitative potential. In the transcript, this sole reference to fraudulent enlistment takes up one paragraph in almost nine pages of sentencing argument.

We find that the fraudulent enlistment conviction would still have been a consideration for the military judge in sentencing. However, considering the totality of the facts of the case, including the lasting effect that the sexual abuse of the child will have on her, we conclude that the vast majority of the confinement imposed would have been for sexual abuse of a child.

We accordingly reassess Appellant's sentence, and, based on the totality of the circumstances, we can confidently and reliably determine that, absent the error, the sentence adjudged would have been no less than a dishonorable discharge, confinement for 33 months, and reduction to the grade of E-1.

## III. CONCLUSION

The findings of guilty as to Charge I and its Specification are **SET ASIDE**. Charge I and its Specification are **DISMISSED**. The findings of guilty as to Specifications 3 and 4 of Charge II are **AFFIRMED**. We reassess the sentence to a dishonorable discharge, confinement for 33 months, and reduction to the grade of E-1. The sentence, as reassessed, is **AFFIRMED**. The affirmed findings and the sentence as reassessed are correct in law and fact, and no additional error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

16